*This opinion is subject to revision before final publication in the Pacific Reporter*

**2015 UT 77**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

DANIEL V. SCHROEDER,
*Petitioner, Appellant*,

*v.*

UTAH ATTORNEY GENERAL'S OFFICE and the UTAH STATE RECORDS
COMMITTEE,
*Respondent, Appellee.*

No. 20121057
Filed August 25, 2015

Third District, Salt Lake
The Honorable Keith A. Kelly
No. 110917703

Attorneys:

Jeffrey J. Hunt, David C. Reymann, Lashel Shaw, Salt Lake City,
for appellant

Sean Reyes, Att'y Gen., Nancy L. Kemp, Asst. Att'y Gen, Salt Lake
City, for appellee Utah Attorney General's Office

Sean Reyes, Att'y Gen., Paul H. Tonks,  Asst. Att'y Gen, Salt Lake
City, for appellee Utah State Records Committee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM, JUSTICE PARRISH,[*] and
JUSTICE HIMONAS joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1    Article I, section 14 of the Utah Constitution prohibits state
actors   from   conducting   unreasonable   searches   and   seizures.

---

[*] Justice Parrish sat on this case and voted prior to her resignation
on August 16, 2015.

Typically, the state may seize evidence without violating section 14 if it does so under a valid warrant or subpoena. In this case, David Schroeder filed a public records request under the Government Records Access and Management Act (GRAMA), seeking bank records the State had seized lawfully during a criminal investigation. The district court below denied the request, holding that section 14 provides a broad right of privacy that prevents the State from disclosing bank records even though the records themselves were seized legally. We must now determine whether the right against unreasonable searches and seizures prevents Mr. Schroeder from accessing information the State seized during its investigation. We conclude that it does not. There can be no violation of section 14 when the government obtains information through a valid warrant or subpoena, so the state constitution does not exempt the bank records from GRAMA's public disclosure requirements.

¶2    In so holding, we note that nothing in our decision requires state prosecutors to implement an open-file policy with journalists and curious citizens. GRAMA provides sixty-four separate categories of protected information that no one can access without a compelling justification. While these protections shield much sensitive material from public disclosure, to the extent GRAMA's disclosure requirements are too permissive, that is a problem with a legislative solution, not a matter of state constitutional law.

¶3    The district court also denied Mr. Schroeder access to a summary of the bank records (the Quicken Summary) and an investigator's handwritten notes (the Post-it Note), holding that both documents were protected attorney work product. Under GRAMA, the state has no obligation to disclose attorney work product, but a district court may nevertheless order disclosure if the interests favoring disclosure outweigh those favoring protection. Work product includes records prepared solely in anticipation of litigation and any material that discloses the mental impressions or legal theories of an attorney concerning the litigation. We conclude that the district court correctly classified the Quicken Summary and Post-it Note as attorney work product because both documents contain the mental impressions of state prosecutors. But we ultimately reverse the district court's ruling because the State terminated its investigation years ago, so the interests favoring protection are not as compelling as those favoring disclosure.

¶4    Mr. Schroeder also seeks his attorney fees incurred on appeal under Utah Code section 63G-2-802(2)(a), which allows district courts to award attorney fees and litigation costs to any litigant who "substantially prevails" on a public records request. We

do not reach this issue, because GRAMA provides district courts discretion to award attorney fees after considering a number of factors, including "the public benefit derived from the case" and whether the government's actions "had a reasonable basis." Because the district court has wide discretion in awarding fees and is in a better position than we are to make such a determination, we leave it to the district court to decide this issue on remand.

**Background**

¶5   Mr. Schroeder filed a complaint against the Utah Attorney General's Office in September 2011, asking the court "to compel the [AG's o]ffice to release certain government records" it had refused to disclose six months earlier. According to the complaint, the records concerned "Envision Ogden," a nonprofit organization Ogden Mayor Matthew Godfrey had formed in early 2007. The organization's purpose was "to promote business and recreation in Ogden." The mayor held a series of fundraising events over the next several months, collecting more than $80,000 in contributions. Donors included local businesses, the Ogden-Weber Chamber of Commerce, and the Utah Governor's Office of Economic Development.

¶6   But Envision Ogden did not use all of those funds to promote the city as a destination for tourists and entrepreneurs. Rather, according to Mr. Schroeder, during "the second half of 2007," the organization "made expenditures of at least $26,884 in support of local political campaigns, including independent expenditures in support of Mayor Godfrey's reelection campaign and contributions to" two city council candidates. The organization funneled roughly $20,000 in campaign contributions "through an unregistered entity called Friends of Northern Utah Real Estate" (FNURE). The city council candidates disclosed the FNURE contributions, but their disclosures did not indicate the money's actual source was Envision Ogden.

¶7   Envision Ogden filed a "Political Organization Notice of Section 527 Status" with the Internal Revenue Service in March 2008. According to Mr. Schroeder, he discovered the organization's filings on the IRS website one year later, "learning for the first time who Envision Ogden's major contributors were and that FNURE had received its funds from Envision Ogden." The city council candidates eventually admitted that their FNURE campaign donations were contributions from Envision Ogden.

¶8   The IRS disclosures generated some local press coverage, and the Utah State Bureau of Investigation (SBI) began looking into

the matter in April 2009. SBI closed its investigation in June 2009, but the AG's Office directed SBI to reopen it three months later. The "investigation stagnated for the next 12 months," until the AG's Office "brought the investigation from the SBI into its own office and assigned" it to Lieutenant Tina Minchey. After taking over, she subpoenaed Envision Ogden's bank records sometime "in late 2010."

¶9   In March 2011, the AG's Office announced that the State had closed the Envision Ogden investigation. Mr. Schroeder filed a request under GRAMA the next day, seeking copies of "[a]ll records pertaining to the recently concluded investigation into Envision Ogden." The AG's Office released some of the records but retained others, claiming they were "protected" documents under GRAMA. It denied Mr. Schroeder's subsequent appeal, so he sought review from the Utah State Records Committee under Utah Code section 63G-2-403 (2011).[1] The Committee ordered the AG's Office to release additional documents, but not all of what Mr. Schroeder had requested. Both parties then petitioned the district court for judicial review of the Committee's decision.

¶10 Three records were at issue before the district court: (1) Envision Ogden's bank records, which the State had obtained through a valid subpoena, (2) a summary of the bank records prepared by an investigator in the AG's Office (the Quicken Summary), and (3) a post-it note upon which the investigator claimed to have written directions from state prosecutors (the Post-it Note).[2] The district court concluded that GRAMA did not require the AG's Office to disclose any of these records.

¶11 With respect to the bank records, the court cited *State v. Thompson*[3] for the proposition that "bank customers have a right of privacy in their bank records under the Utah State Constitution, Article I, § 14." It then concluded that even though the records "were properly obtained by the Attorney General's Office pursuant to a lawful criminal investigation," there "would be a constitutional

---

[1] Unless indicated otherwise, we cite to the 2011 version of the Utah Code throughout this opinion, which was the version in effect at the time of Mr. Schroeder's public records request.

[2] The parties also disputed whether GRAMA required disclosure of a declaration from the bank's records custodian. The district court below held that it did, and neither party has challenged that decision on appeal.

[3] 810 P.2d 415 (Utah 1991).

violation for the Attorney General's Office to disclose those bank records to the plaintiff in this case." The court reached the same conclusion regarding the Quicken Summary.

¶12 The court also determined that Utah Code section 63G-2-305 shielded the Post-it Note from disclosure and that it provided another basis to protect the Quicken Summary. Subsections 16 and 17 protect "records prepared by or on behalf of a governmental entity solely in anticipation of litigation" and "records disclosing an attorney's work product, including the mental impressions or legal theories of an attorney or other representative of a governmental entity concerning litigation."[4] Because both documents, in the court's view, were prepared in "determining what criminal charges might be pursued," and because the court believed they also "contain[ed] mental impressions by the Attorney General's Office," the court concluded that the documents were attorney work product and therefore non-public.

¶13 Information that falls within a GRAMA-protected category may nevertheless be released if a court determines that "the interest favoring access outweighs the interest favoring restriction of access."[5] On this issue, the district court concluded that the relevant policy interests weighed against releasing the records. With respect to the Post-it Note and the Quicken Summary, the court first observed that "the public's right to know" favored disclosure. In particular, it noted that "our [g]overnment and our way of life is helped by people . . . like Mr. Schroeder, who wants to hold [g]overnment accountable for its actions, and who is willing to make a personal effort to hold [g]overnment accountable." The court also noted that the government "authorities involved here principally are the Attorney General's Office who's carried out an investigation, but also the relationship of a private organization to the City of Ogden . . . or . . . transactions involving public officials in the Ogden area." The court found the public's "right to reasonably know about what's going on in [g]overnment" to be "very significant."

¶14 Nevertheless, the court concluded that this right did not outweigh the "public policy . . . that an attorney's mental impressions are to be protected." It reasoned that disclosing these records "could prevent the Attorney General from preparing the kind of Quicken register report and categorizing transactions as

---

[4] UTAH CODE § 63G-2-305(16), (17).

[5] *Id.* § 63G-2-404(8)(a).

found in Exhibits 11 through 16, and it could prevent an investigator assisting an attorney from making notes about what the attorney wants to have done in connection with the litigation." Thus, the court determined that the Post-it Note and the Quicken Summary "are protected by the work product protection."

¶15  As to the bank records and the Quicken Summary, the court noted that in addition to the attorney work product policy disfavoring disclosure, "the interest of individuals and organizations in the State of Utah to be free of unreasonable searches of their financial records . . . weighs most heavily" against disclosure. And consequently, neither should be "disclosed because of that Constitutional protection." Mr. Schroeder appeals the district court's decision. We have jurisdiction under Utah Code section 78A-3-102(3)(j) (2014).

**Standard of Review**

¶16 Mr. Schroeder raises four issues on appeal. First, he claims the district court erred in concluding that article I, section 14 of the Utah Constitution prohibits disclosure of the Bank Records and the Quicken Summary. That issue presents questions of constitutional and statutory interpretation, which we review for correctness.[6] Second, he argues that the court erroneously classified the Quicken Summary and the Post-it Note as protected attorney work product under Utah Code section 63G-2-305(16) and (17). As we explain in more detail below, whether a record is properly classified under GRAMA is a mixed question of law and fact that we review nondeferentially.[7]

¶17 Third, Mr. Schroeder argues the district court incorrectly weighed the public policies pertinent to disclosure of the documents under Utah Code section 63G-2-404(8). Because balancing competing interests is a fact-intensive and "inherently discretionary task," we

---

[6] *See S. Utah Wilderness Alliance v. Automated Geographic Reference Ctr.*, 2008 UT 88, ¶ 13, 200 P.3d 643 (noting that "the interpretation of statutes is a question of law," which "we review . . . for correctness"); *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177 (stating that constitutional issues present legal questions reviewed for correctness), *abrogated on other grounds by State v. Nielsen*, 2014 UT 10, ¶ 43, 326 P.3d 645.

[7] *See infra* ¶¶ 35–36.

review the district court's decision for abuse of discretion.[8] But to the extent the district court applied an improper legal standard, we review its decision for correctness.[9] Finally, Mr. Schroeder requests his attorney fees and litigation costs incurred on appeal under Utah Code section 63G-2-802(2)(a). District courts have wide discretion to award attorney fees, so we review such a determination for abuse of discretion.[10]

**Analysis**

¶18 We reverse the district court's decision shielding the bank records from disclosure. There is no violation of article I, section 14 of the Utah Constitution when the State obtains records through a valid subpoena, even if the records are later disclosed via a public records request. Because section 14 does not exempt the bank records from GRAMA, and because the State has not argued on appeal that the bank records are shielded by any of GRAMA's numerous protective provisions, Mr. Schroeder is entitled to their disclosure after any nonpublic information is redacted as required by GRAMA.

¶19 Next, even though we agree with the district court that GRAMA's attorney work product protections apply to both the Quicken Summary and the Post-it Note, we reverse its decision refusing to order their disclosure. Under GRAMA, even nonpublic records may be released if the interests favoring disclosure outweigh those favoring nondisclosure. And here, the court's balancing analysis improperly focused on general policy concerns without discussing how those interests specifically applied to the records at issue in this case. Applying the proper standard, we conclude that the records should be disclosed because Ogden's citizens have a right to know about potential public corruption, and the State's closure of the investigation years ago substantially reduces any

---

[8] *Supernova Media, Inc. v. Pia Anderson Dorious Reynard & Moss, LLC*, 2013 UT 7, ¶ 19, 297 P.3d 599.

[9] *See Sawyer v. Dep't of Workforce Servs.*, 2015 UT 33, ¶ 25, 345 P.3d 1253 ("We review the legal standard applied to a particular mixed question for correctness."); *Crookston v. Fire Ins. Exch.*, 860 P.2d 937, 939–40 (Utah 1993) ("So long as the trial court applied the correct legal standards, . . . we review the court's decision denying the motion only for an abuse of discretion.").

[10] *See Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 53, 56 P.3d 524.

interest the State has in protecting attorney work product. Finally, we decline to consider Mr. Schroeder's request for attorney fees. Because district courts have broad discretion in deciding whether to award attorney fees, we leave that decision for the district court on remand.

### I. Article I, Section 14 of the Utah Constitution Does Not Apply

¶20 Under Utah Code section 63G-2-201(6)(a), the State has no obligation to release otherwise public records if "another state statute, federal statute, or federal regulation" conflicts with GRAMA's disclosure requirements. The AG's Office argues that the Utah Constitution recognizes a broad right of privacy in bank records that is inconsistent with GRAMA's disclosure requirements. Although section 201 does not explicitly reference the constitution, the State is correct that the legislature has no authority to require disclosure of records the constitution deems protected.[11] So if there is a constitutional right to privacy shielding bank records from public disclosure, Mr. Schroeder would have no right to examine Envision Ogden's bank records.

¶21 The district court below agreed with the State, holding that under our decision in *State v. Thompson*,[12] people have a constitutionally protected privacy interest in their bank records. And based on such a right, the court concluded, "[i]t would be a constitutional violation for the Attorney General's Office to disclose" the bank records to Mr. Schroeder, even though they "were properly obtained by the Attorney General's Office pursuant to a lawful criminal investigation." As we explain below, this misreads *Thompson*. We did not recognize such a broad right of privacy in that case, and the State has not identified any other statute or constitutional provision that would shield Envision Ogden's bank records from disclosure.

¶22 Article I, section 14 of the Utah Constitution does provide citizens in our state with a measure of privacy. But its protections are

---

[11] *See Thomas v. Daughters of Utah Pioneers*, 197 P.2d 477, 503 (Utah 1948) (Latimer, J., concurring) (observing that the legislature's "supreme" power "in the enactment of laws" is circumscribed by "constitutional limits"); *cf. Wadsworth v. Santaquin City*, 28 P.2d 161, 172–73 (Utah 1933) (noting that the legislature had no authority to issue bonds if doing so "create[d] a debt in violation of constitutional debt limits").

[12] 810 P.2d 415 (Utah 1991).

not absolute, and it does not accord bank records special status over other personal information. Rather, section 14 recognizes the "right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures."[13] Like the Fourth Amendment to the U.S. Constitution, we have recognized that this provision prohibits state actors from unreasonably intruding into areas where citizens have a legitimate expectation of privacy.[14] A state intrusion is not unreasonable, however, when the state acts under a valid warrant or subpoena.[15]

¶23 We applied these well-established constitutional principles in *State v. Thompson*. In that case, two defendants challenged their convictions for bribery, racketeering, and other offenses by arguing that the district court improperly denied a motion to suppress their bank records, which the defendants contended were seized in violation of article I, section 14.[16] We held that "under the facts of this case," the defendants "had a right to be secure against unreasonable searches and seizures of their bank statements . . . and all papers which [they] supplied to the bank to facilitate the conduct of [their] financial affairs upon the reasonable assumption that the information would remain confidential."[17] But we also noted that a "bank can be compelled to turn over a customer's records when served with a lawful subpoena" and a bank "customer cannot maintain a constitutional challenge to evidence gathered pursuant to

---

[13] UTAH CONST. art. I, § 14.

[14] *See State v. Poole*, 871 P.2d 531, 537 (Utah 1994) (Durham, J., dissenting) ("Article I, section 14 is implicated if we find that a person has a reasonable expectation of privacy in the area searched." (internal quotation marks omitted)); *State v. Watts*, 750 P.2d 1219, 1221 (Utah 1988) ("Unreasonable *private* searches are not subject to the protection of article I, section 14 of the Utah Constitution." (emphasis added)).

[15] *See State v. DeBooy*, 2000 UT 32, ¶ 13, 996 P.2d 546 (noting that under both the Utah and U.S. Constitutions, a search or seizure is not unlawful if "specific and articulable facts . . . taken together with rational inferences from those facts . . . reasonably warrant the particular intrusion" (first alteration in original) (internal quotation marks omitted)).

[16] *Thompson*, 810 P.2d at 415–16 (second and third alterations in original).

[17] *Id.* at 418 (internal quotation marks omitted).

a subpoena . . . lawfully issued to his bank."[18] Ultimately, we vacated the defendants' convictions because the state seized their bank records through illegal subpoenas.[19]

¶24 *Thompson* thus stands for the unremarkable proposition that there is no violation of article I, section 14 when the state obtains bank records through a reasonable search and seizure. The opinion explicitly restricts the holding to "the facts of this case."[20] And we explicitly held that whatever "right of privacy" individuals may have in their bank records, the Utah Constitution permits the state to intrude upon it "pursuant to a subpoena" that is "lawfully issued" to a bank."[21]

¶25 The AG's Office nevertheless maintains that "nothing in *Thompson* limits its application to the search-and-seizure context— and, in fact, had the Court not first found an independent right to privacy, it would not have needed to reach and apply search-and-seizure law." This is not an accurate statement of the law; the issue of whether "a person has a reasonable expectation of privacy" *is* a matter of search-and-seizure law. In fact, it is the first question we ask when determining whether a search or seizure violated section 14.[22] And far from recognizing a broad, freestanding privacy right in an individual's bank records, our decision in *Thompson* reflects a straight-forward application of article I, section 14.

¶26 Here, no one contends the AG's Office illegally subpoenaed Envision Ogden's bank records. On the contrary, the district court's oral ruling expressly acknowledges that "[i]t appeared to be very reasonable in this case when there were the issues raised in the [SBI] report to the Attorney General to subpoena the documents as part of its investigation." Consequently, we conclude that disclosure of the bank records in this case would not violate article I, section 14, and the district court erred in ruling otherwise.

¶27 Because the Utah Constitution does not prohibit disclosure of Envision Ogden's bank records, the AG's Office must disclose

---

[18] *Id.*

[19] *Id.* at 420.

[20] *Id.* at 418.

[21] *Id.*

[22] *See State v. Price*, 2012 UT 7, ¶¶ 9–10, 270 P.3d 527.

them unless GRAMA protects them.[23] GRAMA provides that the public has a "right to inspect a public record," but records that are "private, controlled, or protected" are generally not available to the public.[24] The government has the burden to establish that a document falls into one of these nonpublic categories.[25]

¶28 Depending on the nature of a particular bank record or other evidence seized in a criminal investigation, there are a number of GRAMA-protected categories that might apply. For example, private records include "records describing an individual's finances" and "other records containing data on individuals the disclosure of which constitutes a clearly unwarranted invasion of personal privacy."[26] Controlled records are those "contain[ing] medical, psychiatric, or psychological data about an individual."[27] And protected records include, among other things, "nonindividual financial information" in some circumstances,[28] "records created or maintained for civil, criminal, or administrative enforcement purposes,"[29] and attorney work product.[30] The AG's Office has not argued, however, that any of these provisions apply in this case. It has therefore not carried its burden to rebut GRAMA's presumption favoring disclosure. Consequently, we conclude that Mr. Schroeder must be granted access to Envision Ogden's bank records.

¶29 We acknowledge that this conclusion may be troubling to state prosecutors and other law enforcement agencies. At first blush, it seems to suggest that anytime the state seizes evidence in a criminal investigation, it places that evidence in the public domain. This concern appears to be what drove the district court's analysis below.

---

[23] *See Deseret News Publ'g Co. v. Salt Lake County*, 2008 UT 26, ¶ 24, 182 P.3d 372 (noting that GRAMA presumes public documents should be disclosed and the government has the burden to justify decisions prohibiting public access).

[24] UTAH CODE § 63G-2-201(1), (3)(a).

[25] *Deseret News Publ'g Co.*, 2008 UT 26, ¶ 24.

[26] UTAH CODE § 63G-2-302(2)(b), (2)(d).

[27] *Id.* § 63G-2-304(1).

[28] *Id.* § 63G-2-305(2).

[29] *Id.* § 63G-2-305(9).

[30] *Id.* § 63G-2-305(16), (17).

¶30 But we also note that even though our state constitution does not prohibit access to some sensitive categories of information, that does not mean state investigators must share their case files with anyone curious enough to ask for a copy. GRAMA recognizes more than sixty separate categories of protected records,[31] including provisions that protect records whose disclosure would compromise an investigator's source of information,[32] "interfere with investigations,"[33] "could be expected to disclose investigative . . . techniques,"[34] or "jeopardize the life or safety of an individual."[35] Moreover, all state agencies have an independent obligation under GRAMA to redact any personal, protected, or controlled information in a record before its release.[36]

¶31 We believe these provisions and others like them ameliorate many of the concerns the AG's Office raises about compromising sensitive criminal investigations. But to the extent GRAMA subjects too much sensitive material to public disclosure requirements, the solution to that problem is convincing the legislature to amend GRAMA, not radically reinterpreting the state constitution.

¶32 In sum, we reject the AG's Office's argument that article I, section 14 exempts lawfully seized bank records from GRAMA's disclosure requirements. And because the AG's Office has not argued that any other statute provides such an exemption or that the records fall within a GRAMA-protected category, Mr. Schroeder is entitled to access them. We now turn to the question of whether GRAMA's attorney work product protections shield the Quicken Summary and the Post-it Note from disclosure.

## II. Work Product Protections Apply, but the Quicken Summary and Post-It Note Should Nevertheless Be Disclosed

¶33 As we have discussed, GRAMA generally prevents disclosure of records that are "private, controlled, or protected."[37] And it classifies as "protected" any record that is "prepared by or on

---

[31] *Id.* § 63G-2-305.

[32] *Id.* § 63G-2-305(9)(d).

[33] *Id.* § 63G-2-305(9)(a).

[34] *Id.* § 63G-2-305(9)(e).

[35] *Id.* § 63G-2-305(10).

[36] *Id.* § 63G-2-308.

[37] *Id.* § 63G-2-201(1), (3)(a).

behalf of a governmental entity solely in anticipation of litigation" or that discloses "an attorney's work product, including the mental impressions or legal theories of an attorney or other representative of a governmental entity concerning litigation."[38] The district court concluded that "[b]oth the 'post-it note' and the 'Quicken Summary' constitute records prepared in anticipation of litigation, and contain mental impressions and legal theories of an attorney or agent of the Attorney General's Office, and are therefore protected records under GRAMA."

¶34 Before addressing the merits, we first clarify that the classification of a record under GRAMA is a mixed question of law and fact that we review nondeferentially. And under that standard of review, we then conclude that the district court properly classified the Post-it Note and the Quicken Summary as attorney work product. We so hold because when a prosecuting attorney directs an investigator to summarize evidence to decide whether criminal charges should be brought, the sole purpose in creating such a record is the anticipation of criminal litigation. Moreover, our own review of the records indicates that both contain the mental impressions of state prosecutors. But even though the district court properly classified them as nonpublic, we nevertheless reverse its decision denying Mr. Schroeder access to the records, because the interests favoring disclosure clearly outweigh those favoring nondisclosure.

*A. The Classification of a Record under GRAMA Is a Mixed Question That We Review Without Deference*

¶35 Both parties assert that the classification of a record under GRAMA is a legal question reviewed for correctness. But we conclude that the issue presents a classic mixed question of law and fact. That is, it involves the application of a legal standard (attorney work product protections) to a set of facts (the nature of the documents and the circumstances surrounding their preparation).[39] And because GRAMA does not specify a standard of review, we must apply the three *Levin* factors to determine whether the district

---

[38] *Id.* § 63G-2-305(16), (17).

[39] *See Manzanares v. Byington (In re Baby B.)*, 2012 UT 35, ¶ 42, 308 P.3d 382 (stating that "mixed questions" of law and fact involve the "application of a legal standard to a set of facts unique to a particular case").

court's classification decision warrants any deference.[40] Those factors are

> (1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on 'facts' observed by the trial judge, such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts; and (3) other policy reasons that weigh for or against granting [deference] to trial courts.[41]

¶36 Applying these factors, we conclude that the district court's decision is not entitled to any deference on appeal. First, the creation of attorney work product likely involves common, recurring factual scenarios about how a particular document was prepared.[42] Second, most work product cases will involve documentary evidence rather than the evaluation of live witness testimony, so resolving these issues will likely not involve complex factual scenarios or other evidence not adequately reflected in a cold appellate record.[43] Finally, other policy concerns favor nondeferential review: just as "law enforcement and the general public ought to be able to rely on a consistent rule established by set appellate precedent as to the reasonableness of certain law enforcement procedures,"[44] prosecutors and investigators should know with some degree of clarity when their communications are subject to public disclosure. For these reasons, we conclude that the district court's decision to

---

[40] *See Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 22, 308 P.3d 461.

[41] *Id.* ¶ 36 (alteration in original) (internal quotation marks omitted).

[42] *Cf. In re Baby B.*, 2012 UT 35, ¶ 44 (noting that Fourth Amendment issues are reviewed with deference because, in part, they involve "a common set of recurring law enforcement practices").

[43] *Cf. Sawyer v. Dep't of Workforce Servs.*, 2015 UT 33, ¶ 13, 345 P.3d 1253 (noting that the second *Levin* factor hinges on whether the district court's decision hinges on "evidence not fully captured in a written appellate record," such as "the direct observation of witness testimony").

[44] *In re Baby B.*, 2012 UT 35, ¶ 44.

classify the Post-it Note and the Quicken Summary as attorney work product should be reviewed without deference.

### B. The District Court Properly Classified the Post-It Note and Quicken Summary as Attorney Work Product

¶37 Having set forth the applicable standard of review, we now turn to the merits. GRAMA protects from disclosure "records prepared by or on behalf of a governmental entity solely in anticipation of litigation"[45] or "records disclosing an attorney's work product, including the mental impressions or legal theories of an attorney or other representative of a governmental entity concerning litigation."[46] We have held that these protections "are nearly identical to the protection provided by both the Federal and Utah Rules of Civil Procedure" in "rule 26(b)(3), widely referred to as the work-product doctrine."[47] We therefore rely on caselaw interpreting "state and federal procedural protections for work product" to define the scope of protection afforded by GRAMA.[48]

¶38 Relying on federal caselaw, we held in *Southern Utah Wilderness Alliance* that GRAMA "incorporates [a] two-tier approach" in "protecting government records containing" attorney work product.[49] The first tier covers "work prepared in anticipation of litigation by an attorney or his agent."[50] The second tier protects "core or opinion work product that encompasses the mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation."[51] For reasons discussed below, we conclude that the Post-it Note and the Quicken Summary are shielded by both tiers of GRAMA's work product protections.

1. The documents were prepared solely in anticipation of litigation

¶39 The Post-it Note and Quicken Summary are shielded by GRAMA's first tier of work product protection because they were

---

[45] UTAH CODE § 63G-2-305(16).

[46] *Id.* § 63G-2-305(17).

[47] *S. Utah Wilderness Alliance v. Automated Geographic Reference Ctr.*, 2008 UT 88, ¶ 23, 200 P.3d 643.

[48] *Id.*

[49] *Id.* ¶ 24.

[50] *Id.* (internal quotation marks omitted).

[51] *Id.* (internal quotation marks omitted).

both prepared solely in anticipation of litigation. We have held that a document is attorney work product if it is prepared "primarily for use in pending or imminent litigation."[52] In other words, any "material that would not have been generated but for the pendency or imminence of litigation" receives attorney work product protection.[53] By contrast, documents "produced in the ordinary course of business" or "created pursuant to routine procedures or public requirements unrelated to litigation" do not qualify as attorney work product.[54] Accordingly, documents created as part of a government actor's "official[] duties" receive no protection even if the documents "are likely to be the subject of later litigation."[55]

¶40 For example, in *Southern Utah Wilderness Alliance*, we held that GRAMA required a state agency to disclose geographic data on every right-of-way the state owned for the purpose of building public highways over federal land.[56] Even though the state had been involved in litigation with both the federal government and environmental groups regarding the scope of these rights-of-way and had worked with the agency in compiling the data,[57] we held that the records were not prepared solely in anticipation of litigation, because the agency was required by statute "to create and maintain" such records anyway.[58]

¶41 By contrast, in *Salt Lake City Corp. v. Haik*, a city hired a contract attorney to examine its water-exchange agreement with several irrigation companies "in response to threats of litigation."[59] The Utah Court of Appeals concluded that the attorney's opinion letters evaluating the exchange agreements qualified for GRAMA's attorney work product protections.[60] The court observed that even though no lawsuit had ever been filed, the city hired the attorney in

---

[52] *Id.* ¶ 25.

[53] *Id.* (internal quotation marks omitted).

[54] *Id.*

[55] *Id.* (alteration in original) (internal quotation marks omitted).

[56] *Id.* ¶¶ 1, 3, 6, 26.

[57] *Id.* ¶ 26.

[58] *Id.* (citing UTAH CODE § 72-5-304(3) (2008)).

[59] 2014 UT App 193, ¶¶ 2, 6, 31, 334 P.3d 490.

[60] *Id.* ¶ 31.

response to threats of litigation, and the opinion letters were prepared to advise the city "about prospective litigation."[61]

¶42 Mr. Schroeder maintains that the AG's Office has an independent obligation to investigate crime, so any documents it creates during that process cannot be produced "solely" in anticipation of litigation, particularly if no lawsuit is ever filed. But unlike the geographic data in *Southern Utah Wilderness Alliance*, the Post-it Note and Quicken summary are not particular kinds of records the AG's Office had an independent statutory obligation to produce. The state may routinely create a variety of records during an investigation, but state prosecutors do not acquire the power to subpoena witnesses or documentary evidence until after they formally receive court approval to open a criminal investigation under Utah Code section 77-22-2.[62] And an official investigation is a substantial step toward filing criminal charges and initiating litigation that distinguishes records created in anticipation of a criminal prosecution from material routinely produced by law enforcement during the early stages of a criminal investigation.

¶43 Here, because both records at issue were created after the AG's Office opened a formal investigation, we conclude they were prepared solely in anticipation of litigation. According to the special agent who created the records, the AG's Office moved to open the investigation under section 77-22-2 after receiving a report from the SBI detailing potential criminal activity. She stated, "In my capacity as an investigator for the Utah Attorney General's Office, and acting under the advice and at the direction of the prosecutors of that Office, I was assigned to conduct a criminal investigation into the activities of Envision Ogden." She also claimed to have "prepared a post-it note" during the "course of conducting the investigation," which contained "certain personal notes to remind [herself] to do certain things in connection with the investigation." And "at the request of the prosecutors who were advising and directing [her], [she] prepared a summary of the financial transactions, which [she] compiled from the bank records which [she] obtained by way of the investigative subpoenas." In other words, she prepared both

---

[61] *Id.*

[62] UTAH CODE § 77-22-2(2)(a), (3)(a) (2014) (providing that "upon application and approval of the district court," a "prosecutor may" "subpoena witnesses" and "require the production of books, papers, documents, recordings, and any other items that constitute evidence or may be relevant to the investigation").

documents at the direction of state prosecutors after the State opened an official investigation into Envision Ogden's financial activities.

¶44 Further, the fact that the AG's Office did not ultimately file criminal charges is not determinative. Just as the attorney's opinion letters in *Haik* received work product protection even though no one ever sued the city, there was no reason to prepare the Post-it Note or the Quicken Summary aside from determining whether to initiate a criminal prosecution. For these reasons, we conclude that both documents were prepared solely in anticipation of litigation and therefore qualify as work product under GRAMA's first tier of work product protection.

2. The Post-it Note and the Quicken Summary also contain the mental impressions of state prosecutors

¶45 The Post-it Note and the Quicken Summary also qualify for protection under GRAMA's second tier of work product protection—records "disclosing an attorney's work product, including the mental impressions or legal theories of an attorney or other representative of a governmental entity concerning litigation."[63] We have held that this "core opinion" work product receives heightened protections compared to factual work product.[64] The district court reviewed both the Post-it Note and the Quicken Summary *in camera* and concluded that they "very clearly contained the mental impressions of the attorney or at least the assistant who's providing assistance for the attorney." After examining both documents ourselves *in camera*, we agree with the district court.

¶46 Without revealing the actual content of the Post-it Note, we note that the special investigator who prepared it stated in an affidavit that she did so after the AG's Office formally opened a criminal investigation under Utah Code section 77-22-2. She said the notes were "to remind" herself "to do certain things in connection with the investigation" after speaking with state prosecutors. After reviewing the document ourselves, we believe that disclosing these action items would reveal specific directions the investigator received from state prosecutors. And because a prosecutor's mental impressions fall squarely within the definition of "core opinion" work product, we conclude that GRAMA's work product protections apply to the Post-it Note.

---

[63] UTAH CODE § 63G-2-305(17).

[64] *S. Utah Wilderness Alliance*, 2008 UT 88, ¶¶ 24, 28.

¶47 We also believe that the Quicken Summary contains sensitive information about how prosecutors at the AG's Office viewed the Envision Ogden investigation. The investigator who prepared the summary stated that she "prepared a summary of [Envision Ogden's] financial transactions" from the subpoenaed bank records, and she did so "at the request of the prosecutors who were directing and advising me." Mr. Schroeder correctly points out that compilations of facts do not qualify as work product unless "the act of culling, selecting, or ordering documents reflects the attorney's opinion as to their relative significance in the preparation of a case or the attorney's legal strategy."[65] But our review of the Quicken Summary leads us to believe that the transactions are categorized in such a way that disclosing the summary would reveal which transactions prosecutors believed were suspicious, information that is not apparent from the raw bank records themselves. We therefore conclude that disclosing the Quicken Summary would reveal the mental impressions of state prosecutors, so it is also shielded by GRAMA's work product protections.

¶48 In sum, we conclude that the district court properly categorized the Post-it Note and the Quicken Summary as attorney work product under GRAMA. Both documents were prepared after the AG's Office opened a formal criminal investigation, so they were created solely in anticipation of initiating a criminal prosecution. Additionally, both documents contain the mental impressions of state prosecutors.

*C. The Post-It Note and Quicken Summary Should Nevertheless Be Disclosed Because the Interests Favoring Disclosure Outweigh Those Favoring Protection*

¶49 Although the district court properly categorized the Post-it Note and the Quicken Summary as protected attorney work product, section 63G-2-404 of GRAMA provides that a court "may" still disclose protected records if it determines that "the interest favoring access outweighs the interest favoring restriction of access."[66] The statute directs the court to make that determination "upon consideration and weighing of the various interests and public policies pertinent to the classification and disclosure or nondisclosure . . . of information properly classified

---

[65] *See Shapiro v. U.S. Dep't of Justice*, 969 F.Supp. 2d 18, 32 (D.D.C. Sept. 18, 2013).

[66] UTAH CODE § 63G-2-404(8)(a).

as . . . protected."[67] Because this type of "[b]alancing" determination "is an inherently discretionary task," we review such a decision for abuse of discretion.[68] This is often the case where a statute commits a decision to the district court's discretion based on its evaluation of the "totality of the circumstances."[69] When reviewing such a decision, we do not second-guess the district court's decision so long as it "consider[s] all legally relevant factors" and reaches a conclusion permitted by law.[70] But legal errors, such as the incorrect interpretation of a statute or the application of an improper legal standard, are usually an abuse of discretion.[71]

¶50 Mr. Schroeder argues that the district court exceeded its discretion because the pertinent "interests are heavily weighted towards disclosure." And he also argues that the district court committed a legal error by assuming, "incorrectly, that the balancing contemplated by GRAMA involves weighing . . . the *general* interests in protecting attorney work product, rather than the *specific* privacy interests of Envision Ogden in . . . the Quicken Summary and the *specific* work product interests in the Post-it Note and Quicken Summary."

¶51 As explained in more detail below, we agree with Mr. Schroeder that the balancing analysis under GRAMA must be tethered to the specific interests of the parties and the particularized application of the relevant public policies at issue. And for that reason, the district court committed legal error in basing its decision on more general policy considerations. In the interest of judicial economy, we apply the correct standard and conclude that the interests favoring disclosure clearly outweigh those favoring protection. Accordingly, the AG's Office must release the Post-it

---

[67] *Id.*

[68] *See Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶ 19, 297 P.3d 599.

[69] *See, e.g., id.* ¶ 15.

[70] *See State v. Gibbons*, 779 P.2d 1133, 1135 (Utah 1989) (noting that an appellate court will not set aside a sentencing decision so long as the judge considers all the legally relevant factors and imposes a sentence inside the applicable range set by statute).

[71] *See Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 17, 299 P.3d 1058; *see also State v. Ramirez*, 2012 UT 59, ¶ 7, 289 P.3d 444 (noting that "[a]pplying the wrong legal standard . . . will always exceed" a judge's discretion).

Note and the Quicken Summary after redacting any protected, private, or controlled information as GRAMA requires.

1. Balancing under section 404 of GRAMA requires consideration of the parties' specific interests, not just general policy concerns

¶52 We first clarify how district courts should weigh the interests and public policies discussed in Utah Code section 63G-2-404(8)(a). That provision allows a district court to disclose otherwise GRAMA-protected records if the interests in favor of disclosure outweigh those favoring protection. It provides,

> The court may, upon consideration and weighing of the various interests and public policies pertinent to the classification and disclosure or nondisclosure, order the disclosure of information properly classified as private, controlled, or protected if the interest favoring access outweighs the interest favoring restriction of access.[72]

Applying section 404, the district court determined that the relevant interests and policy concerns did not favor disclosure. In so doing, the court weighed three different public policies: (1) "the public's right to know," (2) "attorney work product" protections, and (3) "the right of the individual to be free from individual searches, under Article I, Section 14 of the Utah Constitution."

¶53 The court found that the public has a "very significant" interest "to reasonably know about what's going on in [g]overnment," but it also noted that attorneys "should be able to go about preparing a case for potential criminal prosecution . . . without having those mental impressions and that work product . . . become public." Because disclosing documents like the Post-it Note and the Quicken Summary would, in the court's view, "seriously hamper the investigative ability of the Attorney General's Office," and could also "prevent the Attorney General from preparing" documents like "the . . . Quicken [Summary] . . . and . . . from making notes about what the attorney wants to have done in connection with the litigation," the public policy underpinning work product protections weighed heavily against disclosure. Finally, the court found that "the interest of individuals and organizations in the State of Utah to be free of unreasonable searches of their financial records" weighed "most heavily," and it concluded that none of the records at issue should be disclosed.

---

[72] UTAH CODE § 63G-2-404(8)(a).

¶54 For several reasons, we conclude that the district court applied an improper legal standard and therefore exceeded the discretion committed to it by section 404. First, as we have already discussed, article I section 14 does not recognize a free-standing privacy right in an individual's bank records.[73] So to the extent the policy underpinning section 14 drove the district court's analysis, it relied on an incorrect interpretation of the law.

¶55 Second, the court weighed general policy interests without focusing on their specific application to the documents at issue in this case. This is problematic because many of the exceptions to GRAMA's disclosure requirements involve policies that virtually always outweigh the public's right to know. Attorney-client confidentiality,[74] executive privilege,[75] intellectual property rights,[76] and national security[77] are just a few examples. But while the public's right to know is, in the abstract, often less compelling than these policies, the weight of any particular policy varies depending on the nature of the document at issue. For example, the interest in protecting attorney work product is more compelling during ongoing litigation than it is years after a dispute has been resolved. By weighing the public's right to know generally against competing public policies, however, the district court's approach would likely prevent *any* documents from being released under section 404(8)(a), even where the weight of a particular policy is de minimis with respect to a specific document. This conflicts sharply with GRAMA's strong presumption in favor of public disclosure.[78]

¶56 Requiring courts to weigh the parties' interests in the specific records at issue is consistent with how we have interpreted other balancing provisions within GRAMA. For example, when a record might fit into more than one GRAMA-protected category, section 63G-2-306(1) directs governmental entities to choose one "by considering the nature of the interests intended to be protected and the specificity of the competing provisions."[79] In *Deseret News*

---

[73] *See supra* ¶¶ 20–32.

[74] UTAH CODE § 63G-2-305(16), (17).

[75] *Id.* § 63G-2-305(29).

[76] *Id.* § 63G-2-305(36).

[77] *Id.* § 63G-2-305(42), (45).

[78] *Id.* § 63G-2-102.

[79] *Id.* § 63G-2-306(1).

*Publishing Co. v. Salt Lake County*, we reviewed the county's decision to classify a sexual harassment investigative report as protected.[80] We held that section 306 did not allow the county to "defend its denial of access with this simple syllogism: the [county] reasonably classified all sexual harassment investigative reports 'protected,'; [a particular investigative report] concerned an allegation of sexual harassment; therefore, the report is protected.'"[81] Instead, we held that the county needed to rest its decision on the specific interests and the factual circumstances surrounding a particular report.[82]

¶57 For all of these reasons, we believe GRAMA directs district courts to focus on *particularized* "interests and public policies pertinent to the classification and disclosure . . . of information,"[83] not a general analysis of competing public policies. And by not focusing on the specific interests for and against disclosing the Quicken Summary and the Post-it Note, the district court applied an improper legal standard and therefore exceeded its discretion.

2. Under the proper section 404 weighing analysis, the records must be disclosed

¶58 Having clarified the analysis district courts should undertake when weighing the interests for and against disclosure under section 404(8)(a), we now apply that standard to the facts of this case. We first note that the public's right to know is particularly weighty in this case. According to the allegations in the complaint, the mayor's office solicited and then diverted thousands of dollars from Envision Ogden to local political campaigns. This was not only contrary to donors' expectations that the money be used to promote the city as a tourist destination, but many donors also had internal policies that prohibited them from contributing to political campaigns. These allegations, if true, indicate that an elected official breached the public trust by soliciting funds under false pretenses to benefit political allies. And because Envision Ogden used a shell entity—FNURE—to divert the funds, these troubling actions were largely hidden from the public. Disclosing the Quicken Summary and Post-it Note would therefore serve the significant public policy

---

[80] 2008 UT 26, ¶ 1, 182 P.3d 372.

[81] *Id.* ¶ 21.

[82] *See id.* ¶ 36.

[83] UTAH CODE § 63-G-2-404(8)(a).

interest of allowing Ogden's citizens to know whether their elected officials engaged in unethical, and potentially criminal, activity.[84]

¶59 On the other side of the ledger, the policy of protecting the attorney work product at issue is far less compelling. Even though disclosing either document would reveal core attorney work product, the investigation has now been closed for four years, and Envision Ogden no longer exists. The purpose of work product protections is to "provid[e] attorneys with a zone of privacy permitting effective client advocacy."[85] Disclosing the Quicken Summary and the Post-it Note certainly infringes that interest, but any interest the AG's Office has in maintaining state prosecutors' zone of privacy to effectively litigate the case diminished substantially when it chose not to bring criminal charges. And that interest has continued to diminish in the four years that have passed since the State elected to close its investigation.

¶60 On balance, then, it is clear to us that the public's right to access the Quicken Summary and the Post-it Note—documents relevant to potential corruption in the Ogden Mayor's Office—outweighs the State's interest in protecting the mental impressions and legal theories that might be disclosed in either document. We therefore reverse the district court's decision protecting these documents from disclosure. On remand, the district court should order disclosure of the Quicken Summary and the Post-it Note, with the redaction, consistent with GRAMA requirements, of any private, protected, or controlled information.[86]

### III. We Remand for the District Court to Determine Whether Mr. Schroeder Is Entitled to Attorney Fees

¶61 Finally, Mr. Schroeder argues that we should award him attorney fees for appealing this action. Utah Code section 63G-2-802(2)(a) provides that a "district court may assess against any governmental entity or political subdivision reasonable attorney fees and other litigation costs reasonably incurred in connection with a judicial appeal of a denial of a records request if the requester substantially prevails." In making this decision, the district court is directed by the statute to consider "the public benefit derived from

---

[84] *See id.* § 10-3-1304(2)(b) (2014) (prohibiting public officers and employees from using his or her "official position" to "secure special privileges for the officer or employee or for others").

[85] *Featherstone v. Schaerrer*, 2001 UT 86, ¶ 33, 34 P.3d 194.

[86] *See* UTAH CODE § 63G-2-308.

the case," "the nature of the requester's interest in the records," and "whether the governmental entity's or political subdivision's actions had a reasonable basis."[87]

¶62 We decline to decide this issue and remand to the district court to determine whether Mr. Schroeder is entitled to attorney fees. Generally, district courts have "broad discretion in determining what constitutes a reasonable fee,"[88] so we review such decisions for an abuse of discretion. The statutory language here is permissive and allows the "district court" to award fees after considering a variety of factors. Because this type of decision is discretionary—the court may still decide not award any fees regardless of what happens on remand—the district court is in the best position to make that decision in the first instance.

**Conclusion**

¶63 We reverse the decision of the district court shielding Envision Ogden's bank records, the Quicken Summary, and the Post-it Note from disclosure. With respect to the bank records, there is no constitutional right to privacy in article I, section 14 of the state constitution that categorically exempts bank records from GRAMA. And the State has not argued that the records fall within any GRAMA-protected categories of information. With respect to the Quicken Summary and the Post-it Note, we agree with the district court that both documents are protected attorney work product under GRAMA. But because Envision Ogden no longer exists and the State closed its investigation four years ago, the interests favoring disclosure clearly outweigh the interests favoring nondisclosure. Accordingly, we remand to the district court to order disclosure of all documents, with appropriate redactions, and to determine whether Mr. Schroeder is entitled to attorney fees.

---

[87] *Id.* § 63G-2-802(2)(b).

[88] *Burdick v. Horner Townsend & Kent, Inc.*, 2015 UT 8, ¶ 18, 345 P.3d 531.