**2019 UT App 58**

# THE UTAH COURT OF APPEALS

UTAH LEGAL CLINIC,
Appellant,
*v.*
SALT LAKE CITY CORPORATION AND STATE RECORDS
COMMITTEE OF THE STATE OF UTAH,
Appellees.

Opinion
No. 20170362-CA
Filed April 11, 2019

Third District Court, West Jordan Department
The Honorable James D. Gardner
No. 160905336

Angela H. Elmore, Attorney for Appellant

Catherine L. Brabson and Margaret D. Plane,
Attorneys for Appellee Salt Lake City Corporation

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

HAGEN, Judge:

¶1    Utah Legal Clinic (ULC) appeals the denial of its petition to set aside the final decision and order of the State Records Committee (the Committee) denying ULC's appeal from a records request under the Government Records Access and Management Act (GRAMA). *See* Utah Code Ann. §§ 63G-2-101 to -901 (LexisNexis 2016).[1] In the GRAMA request at issue, ULC

---

1. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from those now in effect, we cite to the current version of the Utah Code for convenience.

requested that Salt Lake City Corporation (the City) disclose all records from the City Prosecutor's Office relating to the criminal prosecution of a ULC client. In response to the request, the City declined to turn over certain records it determined to be protected attorney-client communications and attorney work product. *See id.* § 63G-2-305(17)–(18) (LexisNexis Supp. 2018). On review, the district court balanced ULC's stated public interest in exposing misconduct by the chief city prosecutor in its client's criminal case with the City's interest in protecting prosecutor communications relating to threatened litigation and the exercise of prosecutorial discretion. Because the district court correctly determined that the public interest in favor of disclosing the records was not equal to or greater than the City's interest in nondisclosure, we affirm its denial of ULC's petition to set aside the Committee's final decision and order.

## BACKGROUND

### *Criminal Charges*

¶2 In July 2013, Trenton Mellen was pulled over by a Salt Lake City police officer after failing to stop or yield at a stop sign. Based on the officer's observations and Mellen's performance on a field sobriety test, Mellen was arrested and charged by the City with driving under the influence, driving with an expired driver license, and failure to stop or yield at a stop sign. Mellen was subjected to a blood test, which revealed that he had low levels of Trazodone, an anti-depressant and sleep aid, in his system at the time of his arrest. After he received the report, Mellen provided letters to the City from two of his doctors, in which the doctors explained that Mellen took therapeutic levels of Trazodone to treat a medical condition and that they did not believe he ever abused the drug. Neither letter expressly stated that the drug did not impair Mellen's driving.

¶3     In April 2014, after learning from the toxicologist that the level of Trazodone in Mellen's blood was therapeutic but could still impair his driving, the City offered to dismiss the driving under the influence charge if Mellen would plead guilty to being an incapable driver and failure to stop at a stop sign. In an email to the City, Mellen's attorney characterized the offer as "offensive" and stated that she and Mellen intended to "fight this as long as we have to in order to get the desired result." Mellen filed a motion to suppress the results of his blood test and in July 2014, the justice court granted Mellen's suppression motion, determining after an evidentiary hearing that the officer lacked probable cause to arrest him. Pursuant to Utah Code section 78A-7-118, which entitles prosecutors to a hearing de novo on a "pretrial order excluding evidence," the City appealed this ruling to the district court. *See* Utah Code Ann. § 78A-7-118(5)(f) (LexisNexis 2018). After the de novo hearing, the district court determined that the officer had probable cause to arrest Mellen and remanded the case back to the justice court. *See id.* § 78A-7-118(6).

¶4     Following the remand, trial was set for April 2015. Two weeks before the trial date, Mellen provided the City with notice that an expert would testify that the Trazodone "did not influence or impair [Mellen's] driving." The City dismissed Mellen's charges without prejudice before trial.

*Civil Lawsuit*

¶5     Throughout the proceedings, Mellen maintained that he was not guilty of driving under the influence and had only performed poorly during the field sobriety test due to a prior brain injury. During the traffic stop, Mellen told the officer that he was not under the influence of alcohol or drugs. Both Mellen's mother and his uncle also spoke to the officer before Mellen's arrest and confirmed that Mellen had some physical

disabilities, but that he had driven without incident since he was old enough to drive.

¶6 Mellen's uncle later contacted the Salt Lake City Council, expressing general concern about the way the City was handling Mellen's case and specific concern about the policies of the chief city prosecutor at that time—Padma Veeru-Collings. Mellen's mother also contacted the Salt Lake City Council by email and expressed similar concerns. She concluded her email to the city council by stating that "it ha[d] come to [her] attention that there is a potential class action suit by and for the disabled and [a local newspaper was] planning an article on [Veeru-Collings]" and that she "would like to see this avoided." In August 2014, while the issue of probable cause was pending in the district court, a local newspaper did publish an article that included information about Mellen's case. The article criticized Veeru-Collings's management of Salt Lake City prosecutors and their continued pursuit of charges against Mellen. Alleging prosecutorial conduct in Mellen's case and one other, the article suggested that prosecutors under Veeru-Collings's supervision were prohibited from exercising discretion in dismissing cases, making plea offers, and pursuing less severe punishments for defendants.

¶7 In April 2016, represented by ULC, Mellen filed a notice of claim against the City and four current and former city prosecutors, including Veeru-Collings. The claim alleged that the City, through its employees, engaged in malicious prosecution "when it caused [Mellen] to be prosecuted with malice and without probable cause," engaged in retaliatory prosecution against Mellen "for his participation in the [local newspaper] article," and violated Mellen's constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

*Records Request*

¶8   A few months before filing the notice of claim on Mellen's behalf, ULC made a GRAMA request that the City provide "[a]ny and all emails sent or received by" any "employee or agent of [the City] . . . from July 1, 2013 until today that reference Trenton Mellen" or his justice court or district court cases. The City processed and granted ULC's request in part, providing some records but declining to produce others because it determined that they were prepared "for, or in anticipation of, litigation or a judicial, quasi-judicial, or administrative proceeding." *See* Utah Code Ann. § 63G-2-305(18) (LexisNexis Supp. 2018).

¶9   ULC appealed the City's incomplete release of records to the Committee, arguing that the City misclassified the unreleased records as protected under Utah Code subsections 63G-2-305(17)–(18) and that even if the records were properly classified, "public interest in the disclosure of these documents heavily outweighs the[ir] restriction" because the public has a "very strong" interest "in exposing unethical and potentially tortious actions within the City Prosecutor's office." After in camera review of the records at issue, the Committee denied ULC's appeal, determining that the City had properly classified the records as protected and should not be required to produce them.

¶10   ULC filed a petition for judicial review of the Committee's determination and the district court held a bench trial on the matter. At trial, ULC argued that there was a strong public interest "in maintaining a public trust with the prosecutor's office," in ensuring "that taxpayer money is not used in such a manner that wastes valuable resources," and in ensuring "that prosecutors retain the ability to use discretion," all of which favored disclosure. In support of this argument, ULC pointed to the local newspaper article and anonymous comments about it

that had been posted online, statements from city prosecutors in emails sent to Mellen's defense counsel, and statements from Veeru-Collings to Mellen's uncle. ULC also submitted affidavits from Mellen and his mother. Mellen and his mother described the negative impact that Mellen's case had on their lives and requested that the records be released so that they could understand what motivated the City to prosecute Mellen. According to ULC, this evidence supports the assertion that "there was concern in the community regarding [Veeru-Collings's] office" that demonstrates a public interest in disclosure of the records.

¶11　The City argued that the evidence did not support a substantial public interest in disclosure. It asserted that based on the evidence submitted at trial, ULC was instead requesting disclosure of the records on behalf of Mellen in order to use them in his civil case against Veeru-Collings and other city prosecutors. It claimed ULC was "asking the Court to turn over emails for at least one express purpose, of attacking the folks involved in [the City Prosecutor's Office] communication[s]." The City also offered the testimony of one of the city prosecutors who had been named in Mellen's notice of claim. He testified that there would be a chilling effect if a prosecutor's "thoughts, mental impressions and conclusions about a case could later serve as the basis of a civil suit against them."

¶12　After taking the evidence submitted at trial under advisement and reviewing the records in camera, the district court concluded both that the records contained protected attorney-client communications and attorney work product and that "the interest favoring restriction of access to the subject documents in this case outweighs the public interest favoring access." In support of this conclusion, the court found that the fact that ULC had filed a notice of civil claim against Veeru-Collings and three other City prosecutors on behalf of Mellen and that Veeru-Collings had left the City before ULC

requested the records weighed against ULC's stated public interest. As a result, the court determined that "ULC's records request [was] largely an end run around the discovery rules and the protection of the attorney-client and work product privileges that would apply in the civil litigation." The court also found "that ULC's motivation for the records request is to question the Prosecutor's Office's exercise of its prosecutorial discretion in [Mellen's criminal case]." In other words, "the [court found] that ULC's stated public interest is secondary to [Mellen's] personal interest in the records." Ultimately, "the fact that a civil action against [the City] has been threatened weighs heavily in favor of the [City's] interest favoring restriction of access, especially where the content of the protected documents—the prosecutors' exercise of their prosecutorial discretion—is at the heart of the threatened civil litigation." Accordingly, the court dismissed ULC's petition to set aside the Committee's final decision and order.

¶13 ULC appeals the district court's conclusion that it failed to show by a preponderance of the evidence that the public interest favoring access is equal to or greater than the interest favoring restriction of access.[2]

ISSUE AND STANDARD OF REVIEW

¶14 ULC contends that the district court erred in deciding that the City's interest in nondisclosure outweighed the public interest in access because it improperly weighed general policy interests and wrongly considered the private benefit to Mellen of

---

2. ULC does not ask us to review the district court's determination that the records were correctly classified as protected but only whether, assuming the records were properly classified, the district court properly balanced the relevant policy interests.

disclosure. "Because balancing competing interests is a fact-intensive and inherently discretionary task, we review the district court's decision [about the balance of policy interests] for abuse of discretion." *Schroeder v. Utah Attorney Gen.'s Office*, 2015 UT 77, ¶ 17, 358 P.3d 1075 (quotation simplified). However, to the extent that ULC contends that the district court misapplied the legal standard in conducting the balancing test by considering irrelevant interests, "we review its decision for correctness." *Id.*

ANALYSIS

¶15    Utah's GRAMA statutory framework is designed to balance "the right of access to information concerning the conduct of the public's business," *Deseret News Publ'g Co. v. Salt Lake County*, 2008 UT 26, ¶ 13, 182 P.3d 372, with privacy rights relating to personal information collected by the government and "the public policy interest in allowing a government to restrict access to certain records . . . for the public good," Utah Code Ann. § 63G-2-102(2) (LexisNexis 2016). Under this framework, "[a] record is public unless otherwise expressly provided by statute" and "[e]very person has the right to inspect [the record] free of charge." *Id.* § 63G-2-201(1)–(2) (LexisNexis Supp. 2018). But when government records are properly classified into a category of record that is designated by statute as "protected," *see, e.g., id.* § 63G-2-305(17)–(18), the records "may be ordered to be disclosed . . . only if the person or party seeking disclosure of the record has established, by a preponderance of the evidence, that the public interest favoring access is equal to or greater than the interest favoring restriction of access," *id.* § 63G-2-406(1) (LexisNexis 2016).

¶16    Because ULC does not dispute that the records at issue were properly classified as protected, it has the burden to show that the public interest in releasing the records is equal to or greater than the City's interest in nondisclosure. To determine

whether ULC met this burden, the district court was required to weigh and consider "the various interests and public policies pertinent to the classification and disclosure and nondisclosure." *Id.* § 63G-2-404(7)(a) (LexisNexis Supp. 2018). Generally, we will not "second-guess [a] district court's decision [under this section] so long as it considers all legally relevant factors and reaches a conclusion permitted by law." *Schroeder v. Utah Attorney Gen.'s Office*, 2015 UT 77, ¶ 49, 358 P.3d 1075 (quotation simplified). In balancing "the various interests and public policies," the court must conduct an analysis of the parties' specific interests, "not a general analysis of competing public policies." *Id.* ¶ 57. In other words, "the [court's] balancing analysis under GRAMA must be tethered to the specific interests of the parties and the particularized application of the relevant public policies at issue." *Id.* ¶ 51.

¶17 Our supreme court has defined the contours of the GRAMA balancing analysis on only one occasion. In *Schroeder*, the court determined that the district court had failed to focus on the "specific interests for and against" disclosing the records and had therefore applied "an improper legal standard" and abused its discretion. *Id.* ¶ 57. Applying the proper standard, the court held that the records should be disclosed. *Id.* ¶ 60. The work product records at issue in *Schroeder* related to a public corruption investigation of the Ogden mayor's office, which was alleged to have "solicited and then diverted thousands of dollars" from a non-profit formed by the mayor to local political campaigns. *Id.* ¶¶ 5, 58. The court observed that "[t]hese allegations, if true, indicate[d] that an elected official breached the public trust by soliciting funds under false pretenses to benefit political allies" and that, because the non-profit used a shell entity to divert the funds, the scheme was "largely hidden from the public." *Id.* ¶ 58. As a result, the court determined that disclosure of the attorney work product records would serve the "particularly weighty" right of the public to know "whether their elected officials engaged in unethical, and potentially

criminal, activity." *Id.* The government's interest in protecting attorney work product, on the other hand, was "far less compelling" because the investigation had been closed for several years and thus any interest the government had "in maintaining state prosecutors' zone of privacy to effectively litigate the case [had] diminished substantially." *Id.* ¶ 59. Upon properly balancing these two interests, our supreme court determined that the public's right to access the records clearly outweighed the government's interest in nondisclosure. *Id.* ¶ 60.

¶18 The balancing analysis conducted by the district court here comports with the principles of *Schroeder* and the statutory requirements of GRAMA. The district court found that ULC's specific interest in gaining access to the records "is to obtain evidence to use in [Mellen's] threatened civil litigation" against employees of the City and "to question the Prosecutor's Office's exercise of its prosecutorial discretion in [Mellen's criminal case]." The district court noted that ULC had not alleged "widespread corruption by public officials" at the City Prosecutor's Office. Instead, ULC took issue with Veeru-Collings's management style and the amount of discretion she gave her subordinates to dismiss cases "in the interests of justice." The court determined that the "presence of media coverage" was not "all too significant" in weighing the public interest as it was Mellen's counsel who "initiated the coverage." Moreover, given that Veeru-Collings no longer worked for the City and there were no allegations that the Prosecutor's Office was "currently engaged in the type of conduct described in the [local newspaper] article or . . . believed to have occurred in [Mellen's criminal case]," the disclosure would not address any ongoing concerns about the manner in which public officials were discharging their duties. Given that "ULC's allegations [were] mainly limited to [Mellen's criminal case]," the court concluded that "[t]he public interest advanced by ULC is weak."

¶19 The district court weighed this weak public interest against the City's interest in "the ability of the Prosecutor's Office to function in ongoing matters" through written communication without "the attorneys' thoughts, mental impressions and conclusions about a case" later serving "as the basis for a civil suit against them." It determined that "[t]he vast majority of the protected documents are e-mail communications" that "largely reflect the exercise of the attorneys' prosecutorial discretion in [Mellen's criminal case] or seeking legal advice related to [ULC's] threatened litigation." Although the City's interest in protecting the "state prosecutors' zone of privacy to effectively litigate the [criminal] case [had] diminished substantially," *see Schroeder*, 2015 UT 77, ¶ 59, the City retained an "important interest" in protecting the information contained in records "where ULC seeks to use that information in a suit against [the City] and the very attorneys that were involved in the protected communications." Thus, the district court considered the specific interests of the parties and "the particularized application of the relevant public policies at issue" before determining that public policy weighed against disclosure. *See id.*

¶20 ULC nevertheless contends that the district court improperly weighed the City's general policy interest in avoiding a chilling effect on written communication between prosecutors. But in making this argument, ULC fails to point to where in the district court's findings of fact and order of dismissal the court relied on the City's general policy interests. Indeed, what the court actually found was that credible testimony from the City's witness supported the finding that "releasing attorney-to-attorney communication that reveal prosecutors' mental impressions and core work product in [Mellen's criminal case] *would be particularly chilling* where the party seeking disclosure (Mr. Mellen) intends to use the records against the very attorney (and their client) involved in the communications." (Emphasis added.) Rather than undermining

the court's analysis, these findings tether its analysis to "the specific interests of the parties and the particularized application of the relevant public policies at issue." *See id.*

¶21 Furthermore, ULC's argument fails to recognize that under Utah Code section 63G-2-406(1), the court may order protected records released only "if the person or party seeking disclosure of the record has established, by a preponderance of the evidence, that the public interest favoring access is equal to or greater than the interest favoring restriction of access." Based on evidence ULC presented at trial, including the affidavits of Mellen and his mother and the newspaper article that was initiated by Mellen's counsel, the court determined that the public interest ULC advanced was "weak." The court also observed that ULC had not "identified any *particularized* interest applicable to this case that would not be present any other time a criminal defendant who is dissatisfied with his prosecution seeks to unearth evidence of ill-intent by scouring the prosecutor's e-mails."[3] (Emphasis added.) Under GRAMA, the district court

---

3. ULC also argues that the district court erred by considering as part of its analysis of the parties' interests the "personal or private benefit" Mellen might gain if the records were disclosed. We disagree with ULC's characterization of the district court's analysis. The district court did not conclude that ULC was not entitled to disclosure of the records *because* Mellen's civil action might benefit from their release. Rather, the district court determined that the fact that Mellen and ULC were threatening "litigation over the very substance of the subject records" *undermined* ULC's contention that there was a public interest in disclosure beyond the general interest of "any . . . criminal defendant who is dissatisfied with his prosecution." Ultimately, it was ULC's failure "to meet its burden to demonstrate that the public's interest in disclosure is at least equal to [the City's] interest in restricting access," not any prospective benefit to

(continued…)

was not required to decide whether *the City* had shown an interest equal to or greater than the interest put forward by ULC in order to conclude that ULC was not entitled to disclosure of the records. Instead, once it determined that the records were properly classified as protected—a determination that ULC does not challenge—the court was required to determine whether *ULC* had shown, by a preponderance of the evidence, that its stated public interest in access was equal to or greater than the City's interest in nondisclosure. *See* Utah Code Ann. § 63G-2-406(1) (LexisNexis 2016). The district court found that ULC had failed to make this showing. Based on the particular interests put forward by both parties and the record before us, we cannot say that the court exceeded its discretion in doing so.

CONCLUSION

¶22　The district court did not exceed its discretion when it balanced the specific interests of ULC and the City for and against disclosure of the protected records and determined that ULC had not shown by a preponderance of the evidence that its interest in disclosure outweighed the City's interest in protecting attorney-client communications and attorney work product. Accordingly, we affirm.

_____

(…continued)
Mellen, that led the court to conclude the records should not be disclosed.