2003 UT App 438

Warren THURSTON and Frances Thurston, Plaintiffs and Appellants,

v.

WORKERS COMPENSATION FUND OF UTAH, Community Nursing Services, Heal & Co., and Does 1–10, Defendants and Appellees.

No. 20020852–CA.

Court of Appeals of Utah.

Dec. 26, 2003.

Alisha Giles, Aric Cramer, and Victoria Cramer, Cramer Cramer & Adaier LLC, Bountiful, for Appellants.

James R. Black, Black and Associates, Michael P. Zaccheo, Holly B. Platter, Richards Brandt Miller & Nelson, and Gregory J. Sanders, Kipp & Christian, Salt Lake City, for Appellees.

Before JACKSON, P.J., ORME and THORNE, Jr., JJ.

OPINION

ORME, Judge:

¶ 1 Warren and Frances Thurston are the parents and lawful heirs of Roger Thurston and the plaintiffs in this wrongful death action. The trial court entered summary judgment in favor of all three defendants and dismissed Plaintiffs' causes of action, based in tort and contract, due to the lack of sufficient evidence that would allow a jury to determine that any negligence of Defendants was the proximate cause of Roger Thurston's death. We affirm on the merits.[1]

---

1. We have the discretion to dismiss this appeal and assess attorney fees against Plaintiffs due to their failure to comply with Rule 24 of the Utah Rules of Appellate Procedure. Pursuant to rule 24, appellant's brief must contain a statement of the case that "shall first indicate briefly the nature of the case [and] ... [a] statement of the facts relevant to the issues presented for review shall follow. All statements of fact and references to the proceedings below shall be supported by citations to the record." Utah R.App. P. 24(a)(7). We may "assume the correctness of the judgment below" when "a party fails to make a concise statement of the facts and citation of the pages in the record where those facts are supported." *Koulis v. Standard Oil Co.*, 746 P.2d 1182, 1184 (Utah Ct.App.1987). *See also Steele v. Board of Review*, 845 P.2d 960, 962 (Utah Ct.App.1993). We decline Defendants' invitations to dismiss, but do note the deficient nature of Plaintiffs' brief. The statement of the case in *Plaintiffs' opening brief does not paint a very clear picture of the nature of case or the relevant facts of the appeal, and there are essentially no citations to the record on appeal.* It is almost as though Plaintiffs assumed we would read the entire record—over 1800 pages—before turning to consider the briefs. On the contrary, we typically read the briefs first and resort to the record only as may prove necessary in resolving particular issues.

## BACKGROUND

¶2 Roger Thurston was injured in a mining accident on May 3, 1983, which rendered him severely disabled. The majority of his body was burned, and he eventually had to have both arms amputated and became almost completely deaf. Workers Compensation Fund (WCF), the insurance carrier for Thurston's employer, paid nearly $2 million in medical and compensation benefits until Thurston's death in 1998.

¶3 After Thurston was discharged following his initial hospitalization, WCF retained Community Nursing Services (CNS) to provide him with home health care. According to the original complaint, twenty-four-hour home nursing care was provided by CNS, and in the second amended complaint, Plaintiffs allege that WCF hired CNS "[o]n or around December 18, 1986." According to the referring doctor's orders, CNS home health aides [2] were directed to ensure a safe environment for Thurston and assist him in meal preparation and household management four times a week, for a total of 48 hours per week. Starting on January 29, 1998, the visits of the health aides occurred only when requested by Thurston, and the last visit was on May 14, 1998.

¶4 Heal & Company (H & C) was retained by WCF to supervise Thurston's personal health care plan, occasionally assess his needs, and prepare a health care cost projection. H & C's services were completed in April 1998.

¶5 On June 25, 1998, Thurston was found dead at his home. According to the medical examiner's report, Thurston was found nude in the driver's seat of his vehicle with his seat belt fastened, the ignition on, the battery dead, and the garage door closed. The medical examiner found the immediate cause of death to be carbon monoxide intoxication. Due to the unusual circumstances of the death, Thurston's disabilities, and his blood alcohol level of .22, the medical examiner found the manner of Thurston's death could not be determined. The examiner opined there was at least a "possibility that the decedent may have been assisted in his suicide or have been placed in the vehicle by another person(s) without his understanding and consent."

¶6 On March 23, 2000, Plaintiffs commenced this action. In their second amended complaint, Plaintiffs asserted several causes of action, both tort and contract, and sought over six million dollars in damages. All of their claims revolve around the general allegation that Thurston committed suicide as a result of the "totally inadequate" care he received from Defendants. Plaintiffs allege in their brief that "Thurston's health aides frequently neglected their duties and provided [him] with insufficient care, if any at all." Plaintiffs allege that Thurston was depressed during the last month of his life and that Defendants were negligent in not recommending and/or performing a psychological evaluation. Plaintiffs state that "[t]his negligence, among other acts, by Defendants caused Mr. Thurston's depression and alcohol/drug problem to become so severe as to cause him to die." Other specific acts Plaintiffs allege are that CNS employees deprived Thurston of care and were aware of his problems with drugs and alcohol but did not report those problems to their supervisors; that WCF fired CNS upon discovering the inadequate level of care being provided but failed to find a replacement; [3] and that H & C closed Thurston's file without first contacting him or conducting an evaluation.

---

**2.** The requirements and responsibilities of home health aides—now known as certified nursing aides—are stated in section R432–700–22 of the Utah Administrative Code. Although the name and enumerated duties have changed over time, the fundamental nature of the occupation has not. The nursing aides must "be at least 18 years old" and "shall have received a certificate of completion." Among other things, the aides "[p]erform normal household services essential to health care at home"; "[m]ake ... beds"; and "supervise the patient's self-administration of medication[.]" Utah Admin. Code R432–700–22 (2002).

**3.** Plaintiffs' brief makes reference to criminal litigation involving CNS employees responsible for Thurston's care. The record reveals that two CNS employees pled guilty to criminal charges for fraudulently billing for services purportedly provided to Thurston that were not actually performed.

¶ 7 The parties became involved in a discovery dispute after CNS and WCF asserted that information sought by Plaintiffs' interrogatories was protected by the peer review and attorney work-product privileges, respectively. Plaintiffs responded by filing a motion for in camera review, after which WCF filed a motion for protective order. The trial court denied Plaintiffs' request for in camera review and stated that "plaintiffs' Motion is premature in that no Rule 37 Motion to Compel has been filed [pursuant to the Utah Rules of Civil Procedure,] ... the disputed Interrogatories did not seek specific documents, ... [and] the information requested is vague." The court suggested Plaintiffs refine their interrogatories, meet and confer with opposing counsel if the dispute was not thereby resolved, and file a motion to compel if the meeting did not culminate in a resolution. The court then granted WCF's motion for protective order "based upon the plaintiffs' failure to follow appropriate procedural rules." Instead of pursuing the avenues for recourse left open by the trial court, Plaintiffs sought and were denied leave to take an interlocutory appeal from the trial court's discovery order.

¶ 8 Over a year later, the trial court granted summary judgment in favor of Defendants because "each and every of plaintiffs' claims includes, as a necessary element, the allegation that the various defendants' conduct was a proximate cause of the death of Roger Thurston" and

> the only admissible evidence submitted to the court was the Utah State Medical Examiner's Report, which ... by its own terms, is inconclusive as to the manner of death and does not exclude possible mechanisms such as accident, assisted suicide, suicide, or even homicide. Thus, plaintiffs have provided to the court no admissible evidence establishing either the cause in fact of Roger Thurston's death, or the causal connection between defendants' actions and Mr. Thurston's death.

Plaintiffs appeal the summary judgment against them.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 In this appeal, Plaintiffs argue that the trial court erred in granting summary judgment to Defendants. Plaintiffs contend that although the evidence pertaining to the manner of Thurston's death is inconclusive, all explanations of the cause of death involve the negligence of Defendants, and a jury could find, without speculation, that Defendants proximately caused Thurston's death.

¶ 10 Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). " 'When reviewing a court's decision to grant summary judgment, we examine the court's legal conclusions for correctness.' " *Young v. Salt Lake City Sch. Dist.*, 2002 UT 64,¶ 10, 52 P.3d 1230 (citation omitted). "As we analyze the issues, we are mindful that, 'because negligence cases often require the drawing of inferences from the facts, which is properly done by juries rather than judges, "summary judgment is appropriate in negligence cases only in the clearest instances." ' " *Trujillo v. Utah Dep't of Transp.*, 1999 UT App 227,¶ 12, 986 P.2d 752 (quoting *Nelson v. Salt Lake City*, 919 P.2d 568, 571 (Utah 1996)) (other citation omitted).

¶ 11 Plaintiffs also argue that the trial court erred in denying their motion for in camera review because there is no requirement that a motion be made, pursuant to rule 37 of the Utah Rules of Civil Procedure, prior to in camera review and that the trial court had sufficient information to review the documents claimed to be privileged. "Generally, the trial court is granted broad latitude in handling discovery matters," *R & R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1079 (Utah 1997), "and we will 'not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's rulings.' " *Id.* (quoting *Askew v. Hardman*, 918 P.2d 469, 472 (Utah 1996)).

## ANALYSIS

### I. Proximate Cause

¶ 12 The Utah Supreme Court has held:

To prevail on a negligence claim, a plaintiff must establish four essential elements: (1)

that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages.

*Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993). The third element is the key issue in this case. Even if we assume that each Defendant breached a duty to Roger Thurston—as CNS expressly conceded for purposes of the summary judgment motion—Plaintiffs still must present sufficient evidence that would allow a jury to conclude that such breach was a proximate cause of Roger Thurston's death.

¶ 13 Plaintiffs argue that the issue of proximate cause is only properly taken from the jury "where (1) there is no evidence to establish a causal connection, thus leaving causation to jury speculation, or (2) where reasonable persons could not differ on the inferences to be derived from the evidence on proximate causation." *Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 487 (Utah Ct.App.1991), *aff'd*, 862 P.2d 1342 (Utah 1993). Defendants argue, and the trial court agreed, that although "[p]roximate cause is ordinarily a question of fact for the jury," *Rose v. Provo City*, 2003 UT App 77,¶ 10, 67 P.3d 1017, summary judgment is appropriate in this case because, "where 'the proximate cause of the injury is left to conjecture, the plaintiff must fail as a matter of law.'" *Sumsion v. Streator–Smith, Inc.*, 103 Utah 44, 132 P.2d 680, 683 (1943) (citation omitted).

■ ¶ 14 " 'Proximate cause is "that cause which, in the natural and continuous sequence[ ] (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury." ' " *Mahmood v. Ross*, 1999 UT 104,¶ 22, 990 P.2d 933 (alteration in original) (quoting *Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996)) (other citation omitted). Thus, to obtain reversal of the adverse summary judgment in this case, Plaintiffs must show that a jury could conclude, without speculation, that Roger Thurston's death would not have occurred if Defendants had not breached their various duties.

¶ 15 Plaintiffs' contention that a trial judge *ordinarily* may not determine the issue of proximate cause is fully supported by Utah case law. For instance, in *Harris v. Utah Transit Authority*, 671 P.2d 217 (Utah 1983), an injured passenger in an auto accident brought suit against the driver of the jeep in which he was riding and the driver and owner of the bus with which they collided. The Supreme Court held that the trial court erred in instructing the jury that if it found that the driver of the jeep observed or should have observed that the bus had stopped, but failed to avoid hitting the bus, then the jeep driver's negligence was the "sole proximate cause of the collision." *Id.* at 219. This instruction was improper because the plaintiff alleged that the driver of the bus either stopped too quickly, failed to completely exit the lane of traffic, or had faulty brake lights. *See id.* at 220. The Supreme Court held that the "instruction was erroneous because it failed to submit the proximate cause issue to the jury for determination" in that the driver of the bus may have been contributorily negligent. *Id.* The Court made the following statement, upon which Plaintiffs rely in the instant case: "Where the evidence is in dispute, including the inferences from the evidence, the issue should be submitted to the jury." *Id.*

■ ¶ 16 Notwithstanding the general rule, it is also true that summary judgment may be granted on proximate cause in appropriate circumstances. In *Mitchell v. Pearson Enterprises*, 697 P.2d 240 (Utah 1985), plaintiffs brought an action against a hotel for the wrongful death of Mitchell, alleging that the hotel in which he was murdered was negligent for failing to provide adequate security for the protection of hotel guests. *See id.* at 243. The Utah Supreme Court affirmed summary judgment even though the plaintiffs had established material issues of fact with respect to the negligent security measures taken by the defendants. *See id.* at 245. The Court explained that

the inquiry does not end there. Demonstrating material issues of fact with respect to defendants' negligence is not suffi-

cient to preclude summary judgment if there is no evidence that establishes a direct causal connection between that alleged negligence and the injury. Certainly, ordinarily the issue of proximate cause is a matter to be submitted to the jury for its determination. However, in appropriate circumstances summary judgment may be granted on the issue of proximate cause.

In this case, plaintiffs failed to make out a case based on the specific acts of alleged negligence because there is an absence of proof that the alleged negligence was the proximate cause of Mitchell's death.

*Id.* Summary judgment was proper because "there [was] no direct evidence linking Mitchell's death with the alleged inadequate security measures at the [hotel]" and the plaintiffs therefore did not satisfy their burden of showing causation. *Id.* at 246. Partly due to the possibility that the decedent invited the assailant into his room, the jury could not be permitted to speculate as to whether proper security measures would have prevented the death. *See id.*

¶ 17 Similarly, in *Clark v. Farmers Insurance Exchange,* 893 P.2d 598 (Utah Ct.App. 1995), the plaintiff was injured at some point during a series of chain-reaction car accidents. This court affirmed summary judgment due to the "complete absence of evidence on causation." *Id.* at 601. This determination was made because no one knew how Clark was injured, the plaintiff's own expert could not "determine the mechanism of plaintiff's injury without speculating or guessing," and another expert testified that the factual circumstances "[were] so vague and unidentifiable that it is really hard to be precise in coming to any conclusion." *Id.*

 ¶ 18 Plaintiffs in this case contend that although the inferences from the evidence are disputed, "all explanations based

on the evidence presented by Plaintiffs[ ] as to the manner of Mr. Thurston's death involve the negligence of the Defendants" and that under *Harris,* the issue should be submitted to the jury. Plaintiffs attempt to distinguish *Mitchell* and *Clark* by arguing "there is substantial evidence of Defendant[s'] negligence," and "there is no speculation here, as in the *Clark* case, as to whose negligence caused the death of Mr. Thurston." However, to avoid summary judgment, Plaintiffs must submit some direct evidence linking the alleged negligence of Defendants to Thurston's death. *See Mitchell,* 697 P.2d at 245. Proximate cause is always a critical issue in negligence cases, *see Hunsaker v. State,* 870 P.2d 893, 897 (Utah 1993), and in this case, due to the unusual circumstances and lack of direct evidence surrounding Thurston's death, the jury would need some assistance in making the connection between the conduct of Defendants and the death of Thurston.

 ¶ 19 Utah Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Plaintiffs submitted an affidavit of two experts, but the affidavit was struck by the trial court because there was no evidence "that either affiant possesses the expert qualifications to express opinions regarding the manner of death of the decedent."[4] As a general matter, "trial courts 'are to be given a wide measure of discretion in determining whether a particular witness qualifies as an expert.' " *State v. Crosby,* 927 P.2d 638, 645 (Utah 1996) (citations omitted). In this case, the affidavit fails, without regard to the qualifications of the witnesses, because the witnesses expressed *no* opinion as to causation.

---

**4.** According to the curriculum vitae provided by Plaintiffs' experts, the highest level of education obtained by the first witness is a Master's Degree in "Occupational Health/Adult Health, Nurse Practitioner" and the second witness lists "Associate of Science in Nursing." We note that "formal training or education is not a prerequisite to giving expert opinion, and a witness may qualify

as an expert by virtue of his 'experience [or] training.' " *Randle v. Allen,* 862 P.2d 1329, 1337 (Utah 1993) (alteration in original) (citation omitted). However, the witnesses do not identify any experience or training, much less education, that would enable them to assist a jury in determining the causal relationship between Thurston's death and the conduct of Defendants.

¶ 20 Although Plaintiffs' witnesses express the opinion that the Defendants breached their duties, there is no expert testimony or lay opinion that addresses proximate cause. The affidavit is filled with speculation such as, "I suggest that perhaps Thurston's demise could have been prevented if such conditions [i.e., anxiety and depression] had been noted." However, "[t]he general rule regarding the certainty of an expert's opinion is that the expert may not give an opinion which represents a mere guess, speculation, or conjecture." *State v. Jarrell*, 608 P.2d 218, 230 (Utah 1980). Summary judgment was appropriate due to the lack of evidence concerning the proximate cause of Thurston's death.

¶ 21 Essentially the same analysis applies to Plaintiffs' breach of contract claims. Plaintiffs allege in their complaint that WCF breached its contract because it "failed to supervise CNS [and H & C] and coordinate care to Mr. Thurston," and CNS breached its contract "to provide adequate care for Mr. Thurston." Although Plaintiffs argue that "proximate cause is not an element of a breach of contract claim," Utah law holds that Plaintiffs can only recover "general damages, which flow naturally from the breach, and consequential damages, which, while not an invariable result of breach, were reasonably foreseeable by the parties at the time the contract was entered into." *Castillo v. Atlanta Cas. Co.*, 939 P.2d 1204, 1209 (Utah Ct.App.), *cert. denied*, 945 P.2d 1118 (Utah 1997).

¶ 22 "In contract cases the terminology is different, but there is some similarity of idea [to the concept of proximate cause in tort]." Dan B. Dobbs, Handbook on the Law of Remedies § 3.3, at 149 (West 1973). Professor Corbin, in his treatise on contracts, explains that the terms general and consequential damages are used

> to differentiate between those cases in which there are no unusual circumstances, and the sequence of breach and injury, as cause and effect, would be believed to be known to the ordinary man, and other cases in which there are unusual circumstances and there must be evidence that the defendant had reason to know them

and to foresee the injury that has occurred.

5 Arthur L. Corbin, Corbin on Contracts § 1011 (interim ed.1964). Corbin noted that "a causal relation [must] be shown to exist between the defendant's conduct and the harm for which damages are sought." *Id.* at § 997. Plaintiffs in this unusual case have offered no evidence demonstrating that the damages complained of flow naturally from any contract breach attributable to Defendants or were reasonably foreseeable to Defendants.

¶ 23 Plaintiffs' claim is essentially that but for Defendants' acts, Thurston would not have died. Categorizing some of those acts as contract breaches does not eliminate the need to establish a causal connection. Defendants' acts, whether breaches of contract or torts, must be causally linked to Plaintiffs' damages. As Corbin explains,

> damages are not recoverable for injury that is too remote from the conduct of the defendant constituting his breach of duty.... [D]amages are not recoverable for losses suffered ... unless the requirements of the law as to 'proximate' causation are satisfied. The form of this rule is the same whether it is being applied in the field of contracts or in the field of torts.

*Id.* Again, when causation " 'is left to conjecture, the plaintiff must fail as a matter of law.' " *Mahmood v. Ross*, 1999 UT 104, ¶ 22, 990 P.2d 933 (citations omitted).

## II. Discovery Dispute

¶ 24 Plaintiffs also argue that the trial court abused its discretion by denying Plaintiffs' motion for in camera review. The discovery dispute began when CNS objected to two of Plaintiffs' interrogatories and asserted the peer review privilege and WCF objected to one of Plaintiffs' interrogatories as being ambiguous and asserted several privileges. Plaintiffs' response to Defendants' objections was to seek an in camera review, which the trial court denied.

¶ 25 The trial court found the interrogatories to be vague and suggested Plaintiffs clarify the information sought. The court stated that if clarification did not satisfy De-

fendants, Plaintiffs were "to make a good faith attempt to resolve the dispute" by complying with Utah Rule of Civil Procedure 37, and if that attempt failed, Plaintiffs could then file a motion to compel.[5] Instead of following the road map so precisely laid out by the trial court, Plaintiffs filed a petition for interlocutory appeal, which was denied. Given the broad latitude the trial court is given in handling discovery matters, *see R & R Energies v. Mother Earth Indus.*, 936 P.2d 1068, 1079 (Utah 1997), and the reasonable means by which the court attempted to resolve the discovery dispute, we see no abuse of discretion.

## CONCLUSION

¶ 26 The trial court properly granted Defendants' motions for summary judgment because Plaintiffs failed to present sufficient evidence on which a jury could properly conclude that the negligence of Defendants was the proximate cause of Thurston's death. The trial court did not abuse its discretion in handling the discovery dispute, and on the contrary, properly advised the Plaintiffs of reasonable steps to take in order to resolve the dispute.

¶ 27 Affirmed.

¶ 28 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and WILLIAM A. THORNE JR., Judge.

---

5. Rule 37 provides in relevant part:
 If ... a party fails to answer an interrogatory submitted under Rule 33, ... the discovering party may move for an order compelling an answer.... The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.
 Utah R. Civ. P. 37(a)(2)(B).