2018 UT App 89

# THE UTAH COURT OF APPEALS

NORTHGATE VILLAGE DEVELOPMENT LC,
Appellant,
*v.*
OREM CITY,
Appellee.

Opinion
No. 20160408-CA
Filed May 17, 2018

Fourth District Court, Provo Department
The Honorable Lynn W. Davis
No. 090401127

J. Craig Smith, Kathryn J. Steffey, and Clayton H.
Preece, Attorneys for Appellant

Jody K. Burnett and Robert C. Keller, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN and KATE A. TOOMEY
concurred.

MORTENSEN, Judge:

¶1     Northgate Village Development LC purchased property
from Orem City containing multiple stockpiles of buried
garbage, including asphalt and other debris. Although the
parties anticipated that some cleanup would be necessary, the
amount of garbage ultimately discovered was significant,
generating cleanup costs of nearly $3 million. Northgate and the
City dispute who should pay for the cleanup of what garbage.
The district court entered orders excluding evidence of any
garbage unrelated to asphalt and excluding two of Northgate's
expert witnesses from testifying. Northgate, on interlocutory

appeal, contends that these rulings were in error. We agree and reverse.

BACKGROUND

¶2     Northgate agreed to purchase property from the City to develop it for mixed use. The City had previously used the property for its public works facility. The site had apparently also been used to dump "hundreds of thousands of tons of debris," which included removed curb, gutter, sidewalk, asphalt, trees, tires, and transformers, among other things.

¶3     Before the sale, the parties anticipated the presence of at least some of the debris, and the City agreed to "complete any environmental clean-up responsibilities specified in the written action plan" for the site. As Northgate discovered more and more garbage, the parties disputed the meaning of the action plan and the specific responsibilities the City was required to perform. Northgate filed suit against the City in 2009,[1] asserting damages of close to $3 million in compensation for cleaning up garbage.

¶4     The litigation proceeded through discovery and the parties eventually submitted competing motions for summary judgment. The district court, in large part, granted the City's motion and denied Northgate's motion, ruling that the City was

---

1. The date of filing is important as it informs what version of the discovery rules should be applied to the case. Rule 26 of the Utah Rules of Civil Procedure, which governs discovery, was amended in 2011, after this case was filed. *See* Utah R. Civ. P. 26. As we more thoroughly explain below, *infra* ¶ 27, the pre-amendment version of the rule applies here because Northgate originally filed its petition before the amendment's effective date.

responsible only for reimbursing Northgate for removal and disposal of buried electrical transformers. Northgate appealed that order, providing this court with its first occasion to review this case. This court affirmed in part and reversed in part. *See Northgate Village Dev. LC v. Orem City* (*Northgate I*), 2014 UT App 86, ¶ 1, 325 P.3d 123. Because on remand the district court interpreted the holding of *Northgate I* as limiting the type of garbage the City is obligated to clean up, this court's treatment of the term "asphalt" in *Northgate I* is of particular importance.

¶5 In *Northgate I*, this court affirmed the district court's determination that the sale contract obligated the City to perform only those cleanup actions listed on the "Clean-Up List" attached to the contract. *Id.* ¶ 31. However, this court reversed the district court's first interpretation of the Clean-Up List and determined that the Clean-Up List "contains ambiguities," specifically noting that it "does not clearly indicate how the City must deal with buried asphalt." *Id.* ¶¶ 36, 39. This court explained,

> [I]n the section of the Clean-Up List describing the City's clean-up responsibilities in the "Soil Borrow & Landfill Area," there are three entries:
>
> > 1. Landfilling construction materials with pieces of asphalt
> >
> > 2. Permit required for continued landfilling
> >
> > 3. Site assessment and application required for closure of site
>
> Northgate and the City ascribe contrary meanings to this section of the Clean-Up List. In the City's view, the first and second entries should be read together, allowing the City to fulfill its obligation to clean up the asphalt by simply applying for and

receiving proper permits. In Northgate's view, the first and second entries impose separate requirements: the City must clean up the "construction materials with pieces of asphalt" and must also apply for and receive permits for any continued landfilling.

Both the City's reading and Northgate's are plausible. Consequently, without reference to parol evidence of the parties' intent, we see no way to select one reading of the asphalt provision over the other. The Land Sale Contract therefore contains a facial ambiguity, and resolving this facial contract ambiguity requires evidence of the parties' intent. Because the intent of the parties is a question of fact to be determined by the jury, the district court erred by determining at summary judgment that the City could fulfill its asphalt clean-up responsibilities by securing the proper permits. We therefore vacate the district court's determination on this issue.

*Id.* ¶¶ 37–38 (cleaned up).[2] This court ultimately concluded, "Because we recognize facial ambiguities in the Clean-Up List, we vacate the district court's determination that the City satisfied its clean-up obligations. We reverse the district court's grant of summary judgment and remand to allow the district court to hear evidence regarding the parties' intent with respect to asphalt clean-up[.]" *Id.* ¶ 55.

¶6     After remand, the case proceeded and became focused on two points of contention, which we review in detail. We first

_____

2. *Northgate I* contains a detailed description of the potential environmental hazards of buried asphalt. *See* 2014 UT App 86, ¶ 37 n.5, 325 P.3d 123.

outline the facts pertaining to the City's pretrial request to preclude Northgate from introducing evidence of its remediation of certain types of buried debris. In ruling on this issue, the district court considered how this court construed the term "asphalt" in *Northgate I*. Second, we review the facts surrounding Northgate's attempt after remand, as required by *Northgate I*, to articulate its damages as limited by the geographic areas specified in the Clean-Up List and the district court's eventual exclusion of certain expert testimony.

*Exclusion of Evidence Under Rules 401 and 403*

¶7     The City moved to exclude evidence of Northgate's removal of garbage other than asphalt from the site, arguing the evidence was improper under rule 403 of the Utah Rules of Evidence. The City argued that the "[p]resentation of such evidence, testimony, or argument will . . . unfairly prejudice the City to the extent that it unnecessarily imputes actionable conduct to the City, particularly to the extent that it may be alleged that the City violated environmental regulations." Northgate countered that the construction debris with asphalt was intermingled with the rest of the garbage—including buried transformers that the City was required to remove—and that "the exclusion from evidence of all references to hazardous materials found on the . . . site would be prejudicial error." The district court granted the City's motion.

¶8     Although the City had moved to exclude evidence only under rule 403, the district court decided the issue almost exclusively under rule 401.[3] The district court excluded under rule 401 any "evidence regarding Northgate's removal of

---

3. We note that Northgate does not argue that the district court erred by sua sponte deciding the issue under rule 401. Northgate argues only the merits of the court's rule 401 decision, and we analyze only the arguments Northgate brings on appeal.

construction material not containing asphalt." It reasoned that "the City's responsibility regarding landfill material not containing asphalt is not at question in this case per the Court of Appeals' ruling; the Clean-Up List does not include a provision for such landfill material. Therefore, under the Court of Appeals' ruling, that material has no bearing in this case." The district court further reasoned that, despite Northgate's claim that removing asphalt without removing other garbage would be impossible, "the percentage of urban detritus excavated on the property amounted to only 5–10% of the total debris excavated, a negligible expense." The district court also reasoned that any dumping fees associated with removing garbage other than asphalt would likely be offset by the "saved costs in crushing the construction material containing asphalt and refilling the excavation site with it." Upon this analysis, the district court concluded that "evidence regarding the other construction material aside from the asphalt is not relevant."

¶9      The district court also ruled that the evidence of other garbage should be excluded under rule 403. The district court provided only one statement on the matter, saying, "[M]oreover, it would be more prejudicial than probative." The court did not analyze how or why that evidence would be prejudicial.

*Exclusion of Expert Testimony*

¶10      On remand, Northgate filed a motion to extend discovery to allow its experts to identify and limit its claim for damages to the geographic areas outlined in the Clean-Up List in light of the decision in *Northgate I*. The district court granted the motion, and Northgate timely filed supplemental disclosures and reports from its experts, Expert 1 and Expert 2.

¶11      Expert 1's supplemental disclosure refers to, among other things, Greenfield, an excavation company that Northgate hired to assist in unearthing and removing garbage. The disclosure also refers to a bookkeeping and accounting employee for one of

Northgate's related entities (Northgate Employee). Expert 1 reported, "Based on work location designations for each Greenfield invoice prepared by or under the direction of [Northgate Employee], and associated underlying documentation reviewed by the project supervisor, charges by Greenfield to Northgate for site remediation were allocated by pit[.]" Expert 2's report referenced Expert 1's supplemental disclosure and made conclusions "[b]ased on the information provided" in Expert 1's report.

¶12 After the close of the extended discovery period, the City contested the reliability of these expert reports in a motion to exclude Expert 1's and Expert 2's testimony, arguing that Northgate Employee's bookkeeping, upon which the experts' opinions were based, was unreliable. Northgate Employee had testified, in reference to an "apportionment document" that she had prepared—which demonstrated an allocation of excavation costs to particular areas—that she "[did not] remember how [allocating costs by area] was done" or "where [numbers for yardage calculations] came from." The City argued that Northgate's experts were not reliable because they relied on Northgate Employee's report, which itself was unreliable. Northgate responded to the motion to exclude with declarations from Expert 1 and Expert 2 that they did not rely on Northgate Employee's "apportionment document" in forming their opinions.

¶13 The district court excluded the testimony of Expert 1 and Expert 2. In its ruling, the district court concluded that, based on the experts' declarations, their testimony met the threshold for reliability under rule 702(b) of the Utah Rules of Evidence. However, while applying the most current version of the Utah Rules of Civil Procedure, the district court concluded that the declarations were a form of supplementation after the discovery deadline and that "[t]he expert reports failed to contain 'all data and other information that will be relied upon by the witness in forming those opinions.'" (Quoting Utah R. Civ. P. 26(a)(4)(A).)

Consequently, the district court "exclude[d] the expert testimony of [Expert 1] and [Expert 2] under Utah R. Civ. P. 37(f) for failing to comply with Rule 26 disclosures." Northgate appeals.

ISSUES AND STANDARDS OF REVIEW

¶14 Northgate presents three issues for review. First, it contends that "the [district] court erred in finding that evidence of all buried debris, other than transformers and asphalt, is not relevant under Utah Rule of Evidence 401." "The [district] court has broad discretion in determining the relevancy of offered evidence, and error will be found only if the [district] court abused its discretion." *Chapman v. Uintah County*, 2003 UT App 383, ¶ 7, 81 P.3d 761 (cleaned up). Generally, the abuse-of-discretion standard of review includes "review to ensure that no mistakes of law affected a lower court's use of its discretion." *State v. Barrett*, 2005 UT 88, ¶ 17, 127 P.3d 682. A district court's ruling based on a misunderstanding of the rules of evidence is a "threshold legal error," the application of which we owe no deference. *State v. Richardson*, 2013 UT 50, ¶ 23, 308 P.3d 526. Further, "[a] district court's interpretation of case law presents an issue of law, which we review for correctness." *Utah Dep't of Transp. v. Boggess-Draper Co.*, 2016 UT App 93, ¶ 12, 373 P.3d 210 (cleaned up).

¶15 Second, Northgate contends that the district court erred in excluding evidence of Northgate's removal of buried debris not containing asphalt under rule 403. "We review a [district] court's decision to admit or exclude evidence under Rule 403 of the Utah Rules of Evidence under an abuse of discretion standard, and will not overturn a lower court's determination of admissibility unless it is beyond the limits of reasonability." *Diversified Holdings L.C. v. Turner*, 2002 UT 129, ¶ 6, 63 P.3d 686 (cleaned up). "[L]egal errors, such as the incorrect interpretation of a statute or the application of an improper legal standard, are

usually an abuse of discretion." *Schroeder v. Utah Attorney Gen.'s Office*, 2015 UT 77, ¶ 49, 358 P.3d 1075.

¶16 Third, Northgate contends that the district court erred when it excluded Northgate's expert witnesses by applying rule 26 of the Utah Rules of Civil Procedure as amended after 2011, arguing that the court should instead have applied the pre-amendment rule. "Generally, the [district] court is granted broad latitude in handling discovery matters, and we will not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the [district] court's rulings." *Thurston v. Workers Comp. Fund of Utah*, 2003 UT App 438, ¶ 11, 83 P.3d 391. "The proper interpretation of a rule of procedure is a question of law, and we review the [district] court's decision for correctness." *State v. White*, 2016 UT App 241, ¶ 10, 391 P.3d 311 (cleaned up). Again, the "application of an improper legal standard" usually constitutes "an abuse of discretion." *Schroeder*, 2015 UT 77, ¶ 49.

ANALYSIS

I. Exclusion of Evidence Under Rule 401

¶17 The district court ruled that the evidence of any garbage Northgate removed from the site other than asphalt was not relevant—and therefore inadmissible—under rule 401 of the Utah Rules of Evidence. Northgate contends that this exclusion was in error, specifically arguing that "[t]he [district] court's ruling misinterprets and misapplies the Court of Appeals' ruling by improperly limiting the type of buried debris listed on the Clean-Up List."[4] We agree.

---

4. The City claims that Northgate failed to preserve this argument. However, Northgate specifically argued to the district

(continued…)

¶18 Evidence is relevant if (1) "it has any tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action." Utah R. Evid. 401. Based on the district court's reading of this court's ruling in *Northgate I*, the district court ruled that evidence regarding Northgate's removal of other construction material that was not asphalt was not relevant to decide "whether the City was bound under the Agreement to remove asphalt from the property." The district court ruled, "[T]he City's responsibility regarding landfill material not containing asphalt is not at question in this case per the Court of Appeals' ruling; the Clean-Up List does not include a provision for such landfill material. Therefore, under the Court of Appeals' ruling, that material has no bearing in this case." But, we determine that the district court incorrectly interpreted *Northgate I* and thus erroneously excluded evidence as irrelevant.

¶19 This court's decision in *Northgate I* did not narrow the scope of relevant evidence solely to asphalt, as the district court determined. Instead, this court specifically ruled (1) that Northgate's interpretation of the contract—that the City must clean up "'construction materials with pieces of asphalt' and must also apply for and receive permits for any continued landfilling"—was "plausible," *Northgate I*, 2014 UT App 86, ¶¶ 37–38, 325 P.3d 123, and (2) that "[t]he Land Sale Contract . . . contains a facial ambiguity, and resolving this facial

---

(…continued)

court, "If you look at the Court of Appeals' opinion . . . paragraph 37 states, 'In Northgate's view, the first and second entries impose separate requirements. The City must clean up the, quote, "construction materials with pieces of asphalt," end quote, and must also apply for and receive permits for any continued land filling.' So it's not just asphalt." We therefore conclude that the City's preservation argument is meritless.

contract ambiguity requires evidence of the parties' intent," *id.* ¶ 38. This court concluded, "Because we recognize facial ambiguities in the Clean-Up List, we vacate the district court's determination . . . and remand to allow the district court to hear evidence regarding the parties' intent with respect to asphalt clean-up[.]" *Id.* ¶ 55. Thus, the ultimate holding of *Northgate I* is that the Clean-Up List is ambiguous, meaning that the interpretation of the Clean-Up List should be left to the jury. *Id.* ¶¶ 35, 38.

¶20 Further demonstrating that *Northgate I* did not narrow the type of relevant evidence, nowhere in the opinion is there any analysis of the phrase "construction materials with pieces of asphalt." Although *Northgate I* referred to the phrase "construction materials with pieces of asphalt," by way of shorthand, as "the asphalt provision" or "asphalt clean-up," it never substantively analyzed or limited that term of the contract. *Id.* ¶ 38. Instead, as stated, the *Northgate I* court (1) concluded the Clean-Up List is ambiguous as to what the parties intended to include and (2) identified the interpretation and determination of the scope of that provision as an issue to be decided by the jury, not the court. We therefore reject the district court's conclusion that *Northgate I* narrowed the type of relevant evidence.

¶21 The district court's analysis of the question of relevance was based on a misreading of *Northgate I*. Accordingly, because the district court based its determination on an incorrect interpretation of the law, we conclude that the court abused its discretion by excluding the evidence. *See Schroeder v. Utah Attorney Gen.'s Office*, 2015 UT 77, ¶ 49, 358 P.3d 1075 ("[L]egal errors, such as the incorrect interpretation of a statute or the application of an improper legal standard, are usually an abuse of discretion."); *State v. Richardson*, 2013 UT 50, ¶ 23, 308 P.3d 526 (reversing the trial court's rulings under rules 401 and 402 based on a "threshold legal error"); *State v. Barrett*, 2005 UT 88, ¶ 17, 127 P.3d 682 (explaining that the abuse-of-discretion standard of

review generally includes "review to ensure that no mistakes of law affected a lower court's use of its discretion").

## II. Exclusion of Evidence Under Rule 403

¶22   While the district court based its decision to exclude evidence primarily under rule 401, the court also summarily concluded that the evidence should be excluded under rule 403. Northgate argues that this ruling should be reversed because the district court "appl[ied] the wrong standard in requiring only a showing that [such] evidence 'would be more prejudicial than probative' rather than the correct legal standard that the alleged prejudice 'substantially outweighs the probative value.'" We agree.

¶23   Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Utah R. Evid. 403. "A district court abuses its discretion under rule 403 only where it applies the wrong legal standard or its decision is beyond the limits of reasonability." *Met v. State*, 2016 UT 51, ¶ 96, 388 P.3d 447 (cleaned up).

¶24   Here, the district court applied the incorrect legal standard. Its only reference to the issue was its conclusion that admitting evidence of all the types of garbage "would be more prejudicial than probative." The court did not explain whether it determined the prejudice to be "unfair," nor did it explain whether the probative value was "substantially outweigh[ed]" by the danger of any unfair prejudice, as the rule requires. *See* Utah R. Evid. 403. Instead, the court stated only that the evidence "would be more prejudicial than probative." Thus, the district court applied the incorrect legal standard by failing to determine whether the probative value was substantially

outweighed by the danger of unfair prejudice—mere prejudice is not enough.

¶25   We therefore conclude that the district court abused its discretion by excluding evidence under rule 403. *See Met*, 2016 UT 51, ¶ 96.

### III. Exclusion of Expert Testimony

¶26   Northgate contends that the district court erred when it excluded the testimony of its experts, Expert 1 and Expert 2. Specifically, Northgate argues that the district court applied the wrong version of the Utah Rules of Civil Procedure and, in so doing, applied an inapplicable, heightened disclosure standard. Northgate further argues that, because its disclosures satisfied the old rule pertaining to disclosure of expert testimony, the district court's error was not harmless. We agree.

¶27   The Utah Rules of Civil Procedure were amended in 2011. Among the rules affected by the 2011 amendment was rule 26, which generally governs disclosure and discovery. *Compare* Utah R. Civ. P. 26(a)(3)(B) (2009) (requiring the expert report to contain "the subject matter on which the expert is expected to testify[,] the substance of the facts and opinions to which the expert is expected to testify[, and] a summary of the grounds for each opinion"),[5] *with id.* R. 26(a)(4)(A) (2018) (requiring the expert report to contain "a brief summary of the opinions to which the witness is expected to testify[ and] all data and other information that will be relied upon by the witness in forming those opinions"). The purpose of the 2011 amendments was

> to reduce discovery costs by requiring each party
> to produce, at an early stage in the case, and

---

5. Northgate originally filed its petition in 2009. Thus, we cite the 2009 version of the Utah Rules of Civil Procedure.

without a discovery request, all of the documents and physical evidence the party may offer in its case-in-chief and the names of witnesses the party may call in its case-in-chief, with a description of their expected testimony. In this respect, the amendments build on the initial disclosure requirements of the prior rules.

*Id.* R. 26 advisory committee notes. "Due to the significant changes in the discovery rules, the [Utah] Supreme Court order adopting the 2011 amendments makes them effective only as to cases filed on or after the effective date, November 1, 2011, unless otherwise agreed to by the parties or ordered by the court." *Id.* R. 1 advisory committee notes.

¶28 Here, the district court excluded the testimony of Northgate's experts after applying the current rule. The district court stated, "The expert reports failed to contain 'all data and other information that will be relied upon by the witness in forming those opinions.'" (Quoting *id.* R. 26(a)(4)(A).) The language that the district court quoted is not found in the old rule, but is a direct quote from the current rule. Because this matter has been pending since 2009, prior to the 2011 amendments, the old rule applies, and therefore the district court erroneously applied the post-amendment standard.[6]

¶29 Such an error in the application of the law is an abuse of discretion. *See Schroeder v. Utah Attorney Gen.'s Office*, 2015 UT 77, ¶ 49, 358 P.3d 1075 (explaining that the "application of an improper legal standard" usually constitutes "an abuse of discretion"); *Thurston v. Workers Comp. Fund of Utah*, 2003 UT App 438, ¶ 11, 83 P.3d 391 (explaining that a district court abuses

---

6. We note that the parties refer to no agreement between one another, nor any order from the district court, establishing that the amended rule should apply.

its discretion in deciding matters of discovery where it makes erroneous conclusions of law).

¶30   The City argues that any error was harmless because Northgate's disclosures failed even under the old rule. Indeed, if Northgate's disclosures were insufficient under the old rule, the district court's misapplication of the post-amendment standard would be harmless. However, we conclude that Northgate's disclosure satisfied the pre-amendment standard. On this basis, the district court's application of the new rule was harmful.

¶31   The pre-amendment rule required that a written report from retained experts contain

> the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; *a summary of the grounds for each opinion*; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Utah R. Civ. P. 26(a)(3)(B) (2009) (emphasis added). Thus, while the district court excluded the experts' testimony based on insufficient disclosure of complete "data and other information," the applicable rule requires only the disclosure of "a summary of the grounds for each opinion." *Id.* Accordingly, the substantive change in the rule altered the quantum and quality of the disclosure requirement.

¶32   Northgate's expert disclosure states, "Based on work location designations for each Greenfield invoice prepared by or under the direction of [Northgate Employee], and associated underlying documentation reviewed by the project supervisor,

charges by Greenfield to Northgate for site remediation were allocated by pit[.]" The disclosure explains that Expert 1 "reviewed relevant documents contained in [his] files, met with consulting engineers regarding boundaries for [the areas outlined in the Clean-Up List] along with associated surface area including required excavation 'angles of repose.'" The disclosure then explains how Expert 1 used both "[a] document prepared by Greenfield . . . show[ing] a designation for each site remediation cost invoice by 'pit'" and "[a] second allocation factor corresponding to surface areas from which material volumes were moved." These are not "cursory" or "vague" descriptions as the City argues. *See Dahl v. Dahl*, 2015 UT 79, ¶¶ 80–81 (affirming the trial court's order limiting expert testimony where, as grounds for his opinion, the expert cited his "education, knowledge, training, and experience"). Instead, Expert 1 explained that he used invoices, documents from the excavation company, and a surface-area-allocation method to calculate costs. It is wholly plausible from a plain reading of the report that Expert 1, in forming his opinion, did not rely on the "apportionment document" prepared by Northgate Employee— the subject of the City's principle objection. We therefore reject the City's argument and conclude that Expert 1's report sufficiently stated a summary of the grounds Expert 1 applied to arrive at his conclusions.[7]

¶33   Similarly, we conclude that Expert 2's report also satisfied the pre-amendment disclosure standard. The district court excluded Expert 2's testimony based on its incorporation of

---

7. The district court also ruled that the experts' declarations in response to the City's motion to exclude were a form of untimely supplementation to the initial disclosures. We need not address this because we conclude that the initial disclosures complied with the rule. Therefore, no supplementation was necessary under the 2009 rule to bring the disclosures into compliance.

Expert 1's report, which the court had determined was flawed. Because we have determined that Expert 1's disclosure satisfied the pre-amendment disclosure standard, Expert 2's reliance on Expert 1's report does not render Expert 2's report inadmissible. Consequently, we reverse the district court's ruling excluding Expert 2's testimony.

¶34   We conclude that the district court abused its discretion by erroneously applying the post-amendment disclosure standard. Further, we hold that Northgate's disclosures satisfied the pre-amendment standard.

CONCLUSION

¶35   The district court abused its discretion by basing its decision to exclude evidence under rule 401 on a misinterpretation of this court's prior decision in *Northgate I*. We therefore reverse its rule 401 ruling. We also reverse the district court's rule 403 ruling because it applied the incorrect standard. Finally, the district court abused its discretion by erroneously applying the post-amendment disclosure rules when it excluded the testimony of Northgate's experts. Because Northgate's disclosures were sufficient under the pre-amendment rules, the district court's misapplication of the disclosure standard was not harmless. Consequently, we reverse the court's order excluding the testimony of Northgate's experts.

¶36   Reversed and remanded.

_____