*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2019 UT 59**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

NORTHGATE VILLAGE DEVELOPMENT, LC,
*Appellee,*

*v.*

CITY OF OREM,
*Appellant.*

No. 20180465
Filed October 2, 2019

On Certiorari to the Utah Court of Appeals

Fourth District, Utah County
The Honorable Lynn W. Davis
No. 090401127

Attorneys:

J. Craig Smith, Kathryn J. Steffey, Clayton H. Preece,
Salt Lake City, for appellee

Jody K. Burnett, Robert C. Keller,
Salt Lake City, for appellant

JUSTICE PETERSEN authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUDGE VALENCIA joined.

Having recused himself, JUSTICE PEARCE does not participate herein.
DISTRICT JUDGE JENNIFER L. VALENCIA sat.

JUSTICE PETERSEN, opinion of the Court:

### INTRODUCTION

¶1 Ten years ago, Northgate Village Development, LC sued the City of Orem to recover the cost of cleaning up property Northgate had purchased from the City. Northgate contends that when it began

to excavate the property to prepare it for sale to a developer, it found subsurface asphalt and "urban detritus." This litigation centers on who was responsible for cleaning up the property under the parties' agreement.

¶2   After a grant of summary judgment, an appeal, and a reversal and remand, this case was back in the district court. Northgate filed an interlocutory appeal, challenging two of the district court's pretrial evidentiary rulings. The court of appeals reversed, holding that the district court incorrectly excluded expert testimony and other evidence proposed by Northgate. The City petitioned for certiorari, which we granted.

¶3   Because we agree with the court of appeals' reasoning regarding both evidentiary rulings, we affirm.

## BACKGROUND

¶4   Northgate purchased a parcel of property from the City that the City had used to operate a public works facility. When Northgate began excavating the property, it found

> car bumpers, bicycles, tires, water heaters, washing machines, car engines, car parts, asphalt, galvanized pipes, asbestos-containing transit pipe, trees, bushes, medical waste products, brick, mason blocks, concrete, toilets, electrical panels, refrigerators, silverware, 50-gallon drums, conduit, general garbage, storm drains, ADS pipe, slag, barbed wire, field fence, cedar fence posts, railroad ties, plywood, carpet, transformers, mercury-containing ballasts, gas cables, truck mud flaps, plastic sheeting, car doors, pallets, rebar, pop bottles, sewer pipe, metal t-posts, fire hydrants, water valves, ductile iron, copper parts and valves, brass parts, fiberglass insulation, twine, rubber traffic cones, concrete manhole sections, metal rings and lids for manholes, valve boxes, bags of leaves, and metal sheeting for roofs.

¶5   Northgate demanded that the City reimburse its clean-up costs or perform the work itself. The City refused, disputing Northgate's characterization of the parties' agreement. Ultimately, Northgate incurred approximately $3 million in clean-up costs.

¶6   In 2009, Northgate sued the City, alleging breach of contract. The parties filed competing summary judgment motions disputing the terms of their agreement. The parties' contract provided that the

City was to "complete any environmental clean-up responsibilities specified in the written action plan." Northgate argued that the "written action plan" referred to both an Environmental Site Assessment referenced elsewhere in the contract and an Environmental Clean-Up List (Clean-Up List) attached to the agreement. The City argued that the Clean-Up List was the only "written action plan."

¶7    The Clean-Up List outlined certain obligations including: (1) "Landfilling construction materials with pieces of asphalt"; (2) "Permit required for continued landfilling"; (3) "Site assessment and application required for closure of site"; (4) "Landfill operations—burial of asphalt materials—Check permitting & closure requirements including Coordination with State of Utah Division of Solid & Hazardous Waste"; and (5) "Landfill operations—burial of electrical transformers with PCB's."[1]

¶8    The district court agreed with the City that the "written action plan" referred only to the Clean-Up List. Further, the court interpreted the Clean-Up List to require the City to remove only buried transformers. For the remaining debris and landfill material, the court concluded that the agreement obligated the City only to procure the necessary permits to leave it in place.

¶9    Northgate appealed. The court of appeals affirmed the district court's determination that the agreement obligated the City to perform only the clean-up identified in the Clean-Up List, but it disagreed that the list unambiguously required the City to remove only buried transformers. *Northgate Vill. Dev., LC v. Orem City* (*Northgate I*), 2014 UT App 86, ¶ 36, 325 P.3d 123. The court of appeals noted that the parties had "ascribe[d] contrary meanings" to a section of the Clean-Up List that could impose additional obligations on the City:

> 1.  Landfilling construction materials with pieces of asphalt
>
> 2.  Permit required for continued landfilling
>
> 3.  Site assessment and application required for closure of site

---

[1] The copy of the list in the record is difficult to read. Accordingly, we have extracted relevant portions from the parties' briefs and the court of appeals' opinions.

*Id.* ¶ 37. With regard to these items in the Clean-Up List, Northgate argued that the first and second entries imposed separate requirements on the City to both remove construction materials with pieces of asphalt and obtain the proper permit for continued landfilling. *Id.* In contrast, the City argued that the first and second entries should be read together, meaning that the City would fulfill any obligation associated with subsurface asphalt by procuring any necessary permits.[2] *Id.* The court of appeals found both interpretations to be plausible and reversed and remanded to the district court for fact-finding on the parties' intent regarding these ambiguous contract provisions. *Id.* ¶¶ 38–39.

¶10 On remand, the City made pretrial motions to exclude some of Northgate's proposed evidence. First, the City moved under Utah Rule of Evidence 403 to exclude evidence relating to the clean-up of any debris and material other than asphalt (Fill Material Evidence). The district court granted the motion primarily under Utah Rule of Evidence 401, finding that the evidence was irrelevant because it "contributes nothing to the fact in question: whether the City was bound under the Agreement to remove asphalt from the property." The court also stated that the Fill Material Evidence "would be more prejudicial than probative."

¶11 Second, the City moved to exclude the testimony of two of Northgate's proposed expert witnesses under Utah Rule of Evidence 702, arguing that their expert opinions were based on an unreliable study. Northgate asserted that its experts did not rely on the study in question and attached declarations from each expert explaining the methodology they used to calculate damages. The district court found that the new declarations were sufficient to show the experts' methodology was reliable under rule 702. But the court excluded the experts as a discovery sanction because the initial expert reports had not contained the information in the declarations, and without it, "[t]he expert reports failed to contain all data and other information that will be relied upon by the witness in forming those opinions."

¶12 Northgate petitioned for permission to file an interlocutory appeal, which the court of appeals granted. Northgate challenged

---

[2] In *Northgate I*, the court of appeals explained why "[b]uried asphalt presents an environmental hazard." 2014 UT App 86, ¶ 37 n.5, 325 P.3d 123.

both of these evidentiary orders, and the court of appeals agreed and reversed both. *Northgate Vill. Dev., LC v. Orem City* (*Northgate II*), 2018 UT App 89, ¶ 35, 427 P.3d 391.

¶13 The City petitioned this court for certiorari, which we granted. We exercise jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶14 "When a case is before us on certiorari review, we review the decision of the court of appeals . . . de novo to determine whether the court of appeals correctly applied the appropriate standard of review to the district court's determinations." *Brown v. Div. of Water Rights of Dep't of Nat. Res.*, 2010 UT 14, ¶ 9, 228 P.3d 747. "Two different standards of review apply to [Northgate's] claims regarding the admissibility of evidence. The first standard of review, correctness, applies to 'the legal questions underlying the admissibility of evidence.'" *State v. Griffin*, 2016 UT 33, ¶ 14, 384 P.3d 186 (citation omitted). "The second standard of review, abuse of discretion, applies to the [district] court's decision to admit or exclude evidence . . . and to the [district] court's determination regarding the admissibility of expert testimony." *Id.* (citations omitted).

## ANALYSIS

### I. EXPERT TESTIMONY

¶15 We agree with the court of appeals that the district court erred in excluding Northgate's proposed expert testimony as a discovery sanction, because it applied the wrong version of rule 26.

¶16 In 2011, the Utah Rules of Civil Procedure were revised. "Due to the significant changes in the discovery rules," the 2011 amendments are effective only as to cases filed on or after November 1, 2011. UTAH R. CIV. P. 1 advisory committee notes. Because this case was filed in 2009, the parties are subject to the pre-2011 discovery rules.

¶17 Relevant here are the substantive revisions to the expert discovery provisions in rule 26. The pre-2011 rule 26 (Old Rule) required expert disclosures to be accompanied by a written report that "contain[s] the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; [and] a summary of the grounds for each opinion." *Id.* 26(a)(3)(B) (2010). That language changed with the 2011 amendments.

¶18 The post-2011 rule 26 (New Rule) mandates that expert disclosures contain "a brief summary of the opinions to which the witness is expected to testify" and "all data and other information that will be relied upon by the witness in forming those opinions." *Id.* 26(a)(4)(A)(ii)–(iii).

¶19 In the City's motion to exclude the testimony of two of Northgate's proposed expert witnesses, it argued that the expert opinions were based on an unreliable study and therefore inadmissible under Utah Rule of Evidence 702. Northgate countered that its experts did not rely on the study in question and attached declarations from each expert explaining the methodology they had used to calculate damages. The district court found that the new declarations showed that the experts had not relied on the allegedly unreliable study and were therefore admissible under rule 702. But the district court excluded the experts as a discovery sanction because "such information was not provided in the expert reports and the inclusions of the declarations are a form of supplementation after the deadlines." Accordingly, the court concluded:

> The expert reports failed to contain "all data and other information that will be relied upon by the witness in forming those opinions." . . . As such, the Court will exclude the expert testimony of [Northgate's proposed experts] under UTAH R. CIV. P. 37(f) for failing to comply with Rule 26 disclosures.

¶20 The "all data and other information" requirement is found only in the New Rule, which does not apply in this case. By excluding the expert witnesses for this reason, the district court required Northgate to comply with the wrong version of rule 26.

¶21 The court of appeals identified this mistake and was correct in holding that the district court's exclusion of the experts as a sanction was an abuse of discretion. "[L]egal errors, such as . . . the application of an improper legal standard, are usually an abuse of discretion." *Schroeder v. Utah Att'y Gen.'s Office*, 2015 UT 77, ¶ 49, 358 P.3d 1075. Here, the district court improperly applied the New Rule rather than the Old Rule.

¶22 We also agree with the court of appeals' conclusion that the district court's error was harmful. In analyzing whether the error was harmful, the court of appeals evaluated whether Northgate's expert disclosures would have satisfied the Old Rule's requirements and concluded they would have.

¶23 The City argues that "the two standards are substantially similar in this particular respect, and even arguably require the same information." But that is not the case. Providing a "summary of the grounds for each opinion" pursuant to the Old Rule is a less onerous and more general task than the more specific requirement in the New Rule to provide "all data and other information that will be relied upon by the witness in forming those opinions." The court of appeals correctly described the New Rule as altering "the quantum and quality of the disclosure requirement." *Northgate II*, 2018 UT App 89, ¶ 31, 427 P.3d 391.

¶24 The City further argues that the court of appeals substituted its judgment for the district court's by impermissibly reweighing the evidence. But it did not. Once the court of appeals determined the district court had applied the wrong rule, it could have remanded to the district court to determine if the evidence was sufficient under the Old Rule. But the court of appeals was not required to do so. Here, the court of appeals conducted its own analysis of harmfulness, which was also proper.

¶25 The City also asserts that the district court's finding that the declarations were "a form of supplementation after the deadlines" provides an alternative basis for the discovery sanction. But this rationale fails because it also relies on the requirements of the New Rule. As the court of appeals properly noted, "the initial disclosures complied with the [applicable] rule," *id.* ¶ 32 n.7, so no sanction was warranted under that rule for a failure to supplement.

## II. FILL MATERIAL EVIDENCE

¶26 The court of appeals correctly determined that the district court abused its discretion in excluding the Fill Material Evidence as irrelevant under rule 401 and as prejudicial under rule 403 of the Utah Rules of Evidence.

¶27 "[W]e grant a [district] court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion." *Daines v. Vincent*, 2008 UT 51, ¶ 21, 190 P.3d 1269. "An abuse of discretion may be demonstrated by showing that the district court relied on an erroneous conclusion of law . . . ." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 (citation omitted) (internal quotation marks omitted). Further, a "district court abuses its discretion only when its 'decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice . . . [or] resulted from

bias, prejudice, or malice.'" *Jones v. Layton/Okland*, 2009 UT 39, ¶ 27, 214 P.3d 859 (alterations in original) (citation omitted).

¶28 The City moved under rule 403 to exclude evidence relating to the clean-up of any material other than "construction materials containing asphalt"—the Fill Material Evidence. Rule 403 states that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." UTAH R. EVID. 403. The City argued that evidence of the other "urban detritus" that Northgate had unearthed could confuse the jury about the scope of the City's duty to clean the property, unfairly prejudice the City by insinuating it had violated environmental regulations, bias the jury against the City, and provoke the jury to punish the City.

¶29 The district court *sua sponte* excluded the evidence under rule 401. That rule provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.* 401.

¶30 In its analysis, the district court determined that "under the Court of Appeals' ruling, [the Fill Material Evidence] has no bearing in this case" because "the City's responsibility regarding landfill material not containing asphalt is not at question in this case" and "the Clean-Up List does not include a provision for such landfill material." The district court characterized "the fact in question" as "whether the City was bound under the Agreement to remove asphalt from the property."

¶31 But the court of appeals explained this is not the proper reading of *Northgate I. Northgate II*, 2018 UT App 89, ¶ 18, 427 P.3d 391. In that case, the court of appeals remanded to the district court for fact-finding related to the parties' intent as to the section of the Clean-Up List containing these three entries:

1. Landfilling construction materials with pieces of asphalt

2. Permit required for continued landfilling

3. Site assessment and application required for closure of site

*Northgate I*, 2014 UT App 86, ¶¶ 37–38, 325 P.3d 123.

¶32 Although *Northgate I* references "buried asphalt," "the asphalt provision," and "asphalt clean-up," it never defines those terms. And it "did not narrow the scope of relevant evidence solely to asphalt, as the district court determined." *Northgate II*, 2018 UT App 89, ¶ 19. Instead, *Northgate I* concludes that "the Clean-Up List contains ambiguities," *Northgate I*, 2014 UT App 86, ¶ 36, and so any evidence relevant to the parties' intent or any other issue of consequence at trial, such as damages or mitigation of damages, meets the requirement of rule 401. The district court relied on a misinterpretation of *Northgate I* to make legal determinations regarding the relevance of evidence.

¶33 The court of appeals, in *Northgate II*, rightly determined that this was an abuse of discretion. 2018 UT App 89, ¶ 21. As we explained previously, legal errors are generally an abuse of discretion. *See Schroeder v. Utah Att'y Gen.'s Office*, 2015 UT 77, ¶ 49, 358 P.3d 1075; *see also Kilpatrick*, 2008 UT 82, ¶ 23 (providing that "[a]n abuse of discretion may be demonstrated by showing that the district court relied on an erroneous conclusion of law" (citation omitted) (internal quotation marks omitted)); *Maak v. IHC Health Servs., Inc.*, 2016 UT App 73, ¶ 26, 372 P.3d 64 ("The district court abuses its discretion when its decision rests on an erroneous legal determination.").

¶34 We also agree with the court of appeals' rule 403 analysis. In addition to determining that the Fill Material Evidence was irrelevant, the district court concluded that the evidence "would be more prejudicial than probative." But this statement does not reflect the analysis required by the balancing test set forth in rule 403. Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

¶35 We do not question that the district court knows the rule 403 standard, and it included the proper law elsewhere in its order. But when applying the law to this evidence, the district court did not weigh the probative value of the evidence against the danger of unfair prejudice or determine that any prejudice would be unfair. Perhaps the district court did apply this balancing test and was only using shorthand, but we cannot tell that from the Fill Material Order.

We give deference to district courts on evidentiary rulings, but we can only defer to what is provided.[3]

¶36 Based on the language in the Fill Material Order, we agree with the court of appeals that the district court did not conduct the balancing test contemplated by rule 403, which is an abuse of discretion. Accordingly, we affirm.

## CONCLUSION

¶37 The court of appeals correctly held that the district court erred in excluding expert testimony based on the application of an incorrect legal standard and excluding the Fill Material Evidence based on an incorrect interpretation of the law and an incomplete application of rule 403. We affirm the court of appeals' decision.

------

[3] Our decision does not foreclose the possibility that the district court could engage in a proper rule 403 analysis on remand.